UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LARRY PORTER,

                                    Plaintiff,
                                                            9:15-cv-01106
v.                                                          (GLS/TWD)

SHEILA SAUVE, et al.,

                                    Defendants.
_____

APPEARANCES:                        OF COUNSEL:

LARRY PORTER
88-A-4542
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box. 2001
Malone, NY 12953

HON. ERIC T. SCHNEIDERMAN           CHRISTOPHER J. HUMMEL, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, NY 12224


**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

I.      **INTRODUCTION**

        This *pro se* civil rights action has been referred to the undersigned for a report and

recommendation by the Honorable Gary L. Sharpe, Senior United States District Judge, pursuant

to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Larry Porter, an inmate in the custody of

the New York State Department of Corrections and Community Supervision ("DOCCS"),

commenced this action pursuant to 42 U.S.C. § 1983 on September 9, 2015, and has paid the

filing fee.  (Dkt. No. 1.)  Plaintiff's claims arise out of a cell extraction that occurred on January

27, 2009, at Upstate Correctional Facility ("Upstate").  *Id.*

The following claims survived *sua sponte* review pursuant to 42 U.S.C. § 1915A: (1)

Eighth Amendment excessive force and failure to intervene claims against Superintendent

Joseph Bellnier ("Bellnier"), Sergeant ("Sgt.") Richard Rakoce ("Rakoce"), Corrections Officer

("C.O.") Trevor Dunning ("Dunning"), C.O. Jeremy McGaw ("McGaw"), Guard Doe #1, Guard

Doe #2, C.O. Sheila Sauve ("Sauve"), C.O. Eric Facteau ("Facteau"), C.O. James Barse

("Barse"), C.O. James Sorrell ("Sorrell"), Sgt. Doe, Lieutenant ("Lt.") Steve Salls ("Salls"), and

Lt. Thomas Quinn ("Quinn"); (2) Eighth Amendment medical care claim against Nurse Cherie

Fairchild ("Fairchild"); and (3) First Amendment retaliation claim against Sauve.  (Dkt. No. 7 at

21-22.[1])  To date, only Sauve and Sorrell (together, "Defendants") have been served and have

appeared in this action.

Currently pending before the Court is Defendants' motion to dismiss the surviving claims

for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil

Procedure 12(b)(6).  (Dkt. No. 33.)  For the reasons that follow, the Court recommends that

Defendants' motion be granted.

## II.     FACTUAL BACKGROUND

The following relevant facts are derived from the face of Plaintiff's complaint and are

accepted as true for the purposes of deciding the pending motion to dismiss.  *Erickson v. Pardus*,

---

[1]  Page references to documents identified by docket number are to the page number assigned by
the Court's CM/ECF electronic docketing system.

551 U.S. 89, 94 (2007).

At the times relevant to his claims, Plaintiff was confined at Upstate. Plaintiff alleges in his complaint that on January, 27, 2009, Sauve escorted maintenance staff to Plaintiff's cell to fix the "cell-night-light." (Dkt. No. 1 at 17.) However, Plaintiff objected to Sauve's direction that he "lock-out in [his] exercise pen" during the maintenance visit, and to Facteau's direction that he be handcuffed behind his back. *Id*. at 18. Because of Plaintiff's refusal to comply, Sauve and Facteau "radioed the situation." *Id*.

Thereafter, corrections staff were informed by Plaintiff's non-party counselor that Plaintiff had agreed to exit his cell with handcuffs behind his back. *Id*. Nevertheless, Bellnier authorized the use of a chemical agent to extract Plaintiff from his cell. *Id*. at 12.

According to Plaintiff, during the cell extraction, Plaintiff was subjected to excessive force by the extraction team, consisting of Dunning, McGaw, Guard Doe #1, and Guard Doe #2. *Id*. at 10, 19. Plaintiff alleges that Sorrell, Quinn, Salls, Barse, Facteau, and Sauve were present during the cell extraction and failed to intervene. *Id*. at 12-13.[2]

During the cell extraction, Plaintiff "experienced immediately blurred double vison difficulty seeing watery eyes burning sensation painful eye's coughing a lot's difficult breaking burning sensation painful throat." *Id*. at 9 (unaltered text). Fairchild denied Plaintiff medical care after the cell extraction and again the next day. *Id*. at 11-12, 19. The adverse effects of the chemical agent persisted for three weeks. *Id*. at 19.

Plaintiff also alleges that Sauve "held a grudge" against him due to his having filed a grievance against her, and that she "instigated" the cell extraction and issued an inmate

---

[2] Fairchild also was present during the cell extraction. (Dkt. No. 1 at 13.)

misbehavior report in retaliation for that prior grievance.  *Id.* at 17.

### III.    PROCEDURAL HISTORY

Plaintiff has filed two previous actions in this District asserting claims arising from the January 27, 2009, cell extraction: *Porter v. Sauve*, No. 9:09-CV-1254 (GTS/DRH) ("*Porter I*") and *Porter v. Sauve*, No. 9:12-CV-0138 (MAD/ATB) ("*Porter II*").  The relevant procedural history of *Porter I* and *Porter II* were outlined on initial review of the complaint, and will be recited herein for clarity and continuity.  (Dkt. No. 7 at 2-4.)

Plaintiff commenced *Porter I* on November 9, 2009.  *Porter I*, Dkt. No. 1.  On January 7, 2010, now-Chief Judge Glenn T. Suddaby issued a Decision and Order denying Plaintiff's application to proceed *in forma paupers* ("IFP") in accordance with the "three-strikes rule" set forth in 28 U.S.C. § 1915(g).  *Id.*, Dkt. No. 6.  Rather than pay the filing fee, Plaintiff appealed the denial of his IFP status to the Second Circuit.  *See id.*  Following Plaintiff's unsuccessful appeal, Plaintiff was afforded a final opportunity to pay the filing fee.  Upon Plaintiff's failure to do so, judgment dismissing the action was entered on December 29, 2010.  *Id.*, Dkt. No. 11.

Plaintiff filed *Porter II* on January 23, 2012.  *Porter II*, Dkt. No. 1.  On March 21, 2012, District Judge Mae A. D'Agostino issued a Decision and Order denying Plaintiff's IFP application pursuant to the "three-strikes rule" and afforded Plaintiff an opportunity to pay the filing fee.  *Id.*, Dkt. No. 6.[3]  Again, rather than pay the filing fee, Plaintiff appealed the denial of his IFP status to the Second Circuit, which was denied by Mandate issued September 18, 2012.

---

[3]  In concluding that Plaintiff had not demonstrated that he faced "imminent danger of serious physical injury" when he filed *Porter II*, Judge D'Agostino noted that "[a] significant portion of the complaint focuses on a forcible cell extraction that occurred on January 27, 2009."  *Porter II*, Dkt. No. 6 at 4.

*Id.*, Dkt. No. 9. Plaintiff was afforded an additional opportunity to pay the filing fee, but instead filed a petition to the United States Supreme Court for a *writ of certiorari*, which was denied on January 7, 2013. *Id.*, Dkt. No. 14. Plaintiff was afforded a final opportunity to pay the filing fee by April 15, 2013. *Id*., Dkt No. 16. Upon Plaintiff's failure to pay the filing fee, *Porter II* was dismissed and judgment was entered on May 3, 2013. *Id.*, Dkt. Nos. 18 and 19.

On August 19, 2013, Plaintiff filed a motion to reopen the action pursuant to Rule 60(b) of the Federal Rule of Civil Procedure. *Id*., Dkt. No. 23. On December 27, 2013, Plaintiff's motion was denied. *Id.*, Dkt. No. 26. Plaintiff appealed to the Second Circuit. *See id.*, Dkt. No. 37.

In March 2014, Plaintiff attempted to pay the filing fee in *Porter II*. *Id*., Text Entry 3/17/2014. However, because no filing fee was owed to the District Court for *Porter II*, Judge D'Agostino directed the Clerk to determine whether any amounts were owed by Plaintiff in respect to his prior litigation in this District and, if so, to apply the funds to those amounts and refund any payment to Plaintiff. *Id.*, Dkt. No. 32.

In July 2015, more than two years after judgment of dismissal was entered in *Porter II*, the Second Circuit affirmed the denial of Plaintiff's Rule 60(b) motion. *Id*., Dkt. No. 37. However, the Second Circuit's Order included the following: "Though outside the scope of this appeal, we parenthetically note that, by later paying the requisite filing fee, Porter has since cured the defect for which the district court dismissed his underlying complaint. As that dismissal was without prejudice, Porter may seek recourse before the district court." *Id*., Dkt. No. 37 at 2.

Plaintiff promptly filed a letter motion in *Porter II* "seeking recourse" and requesting that

the twenty-three defendants named in his complaint be served with process. *Id.*, Dkt. No. 40. By Decision and Order filed August 26, 2015, Judge D'Agostino concluded that Plaintiff was not entitled to relief of any kind in that action, which had been closed for more than two years. *Id.*, Dkt. No. 43. However, noting that *Porter II* was dismissed without prejudice, Plaintiff was advised that he was "free to commence a new action by filing a complaint and paying the appropriate filing fee." *Id.* at 2-3. In so stating, Judge D'Agostino specifically held that "the issue of whether any new action would be timely is not presently before the Court and is, therefore, not ripe for adjudication." *Id.* at 3 n.1.

This action followed, which was commenced approximately six years and seven months after the January 27, 2009, cell extraction. (Dkt. No. 1.) Liberally construed, Plaintiff claims the doctrine of equitable tolling is applicable and that this action is timely. *Id.* at 10. As such, and in light of the extensive history of Plaintiff's effort to litigate these claims, the District Court declined to address on *sua sponte* review whether the affirmative defense of the statute of limitations was available to Defendants. (Dkt. No. 7 at 4.) The District Court noted that "Defendants are, of course, free to assert the defense in a responsive pleading or by motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Id.*

On October 7, 2016, Defendants moved to dismiss Plaintiff's complaint in its entirety. (Dkt. No. 33.) Defendants contend that dismissal is warranted because Plaintiff claims are barred by the applicable three-year statute of limitations. (Dkt. No. 33-1 at 5-8.) Plaintiff has not responded in opposition to the motion despite being afforded additional time in which to do so. (Dkt. Nos. 34 and 35.)

## IV.   ANALYSIS

### A.   Applicable Legal Standard

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6).  The motion tests the formal legal sufficiency of the complaint by determining whether it conforms to Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972).  Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

A complaint may be dismissed, pursuant to Rule 12(b)(6), only where it appears that there are not "enough facts to state a claim that is plausible on its face."  *Twombly*. 550 U.S. at 570.  While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-accusation."  *Iqbal,* 556 U.S. at 678 (citation and internal quotation marks omitted).  A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice.  *Id.*  (citation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the

material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In considering a Rule 12(b)(6) motion, "the court considers the complaint, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation and internal quotation marks omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (A court may consider "any written instrument attached [to the complaint] as an exhibit or documents incorporated in it by reference."). In this case, the Court has taken judicial notice of papers filed in other litigation involving Plaintiff.

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citations omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*). "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." *McCall v. Pataki*, 232 F.3d 321, 323 (2d Cir. 2000).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112

(2d Cir. 2000) (citation and internal quotation marks omitted).  An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Id.* (citation omitted).

### B.  Statute of Limitations

"Allegations that a claim is barred by an applicable statute of limitations is an affirmative defense normally asserted in an answer.  However, where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss for failure to state a claim."  *Lomonoco v. Anne*, No. 1:15-CV-1163 (GTS/CFH), 2016 WL 4402029, at *6 (N.D.N.Y. Aug. 18, 2016)[4] (citations omitted); *see also Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."); *Burdick v. Johnson*, No. 1:06-CV-1465 (LEK/RFT), 2007 WL 2932777, at *1 (N.D.N.Y. Oct. 4, 2007) ("A motion to dismiss based on a statute of limitations defense should be granted when the running of the statute is apparent from the face of the complaint.").

Claims arising under 42 U.S.C. § 1983 are governed by state statutes of limitations. *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985).  In New York, such claims are governed by the general three-year limitations period governing personal injury claims.  *Owens v. Okure*, 488 U.S. 235, 251 (1989).  Thus, unless the limitations period is tolled for some reason, a plaintiff

---

[4]  Copies of unpublished decisions will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

must file his section 1983 civil rights action within three years of the accrual of each cause of action.

Federal law, however, governs the date when a section 1983 claim accrues. *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997). Generally, under federal law, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980) (internal quotation marks omitted)); *Pearl v. City of Long Island Beach*, 296 F.3d 76, 80 (2d Cir. 2002). Although federal law determines when Plaintiff's claims accrue, state tolling rules determine whether the limitations period has been tolled. *See Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007).

In this case, Defendants argue that all of Plaintiff's claims arising from the January 27, 2009, cell extraction are barred by the statute of limitations. (Dkt. No. 33-1 at 5-8.) This Court agrees. Indeed, it is readily apparent from the face of the complaint that Plaintiff's claims accrued on January 27, 2009, the date on which Plaintiff alleges that excessive force was used against him by corrections officers in order to retaliate against him. (Dkt. No. 1 at 10.) Accordingly, the statute of limitations for Plaintiff's claims expired three years later, on January 27, 2012. As noted above, however, Plaintiff commenced this action in September 2015, more than three years and seven months after the statute of limitations expired. *Id.* at 24.[5] Therefore, Plaintiff's claims are clearly time-barred.

---

[5] While Plaintiff's complaint was formally filed with the Court on September 14, 2015, it is dated September 9, 2015. (Dkt. No. 1.) Under the "prison mailbox rule," the date of filing is deemed to be the date that the prisoner-plaintiff delivered his complaint to a prison guard for mailing to the court, which is presumably to be the date that the complaint was signed. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Noble v. Kelly*, 246 F.3d 93, 97 (2d Cir. 2001).

"However, in 'rare and exceptional' cases, the doctrine of equitable tolling or equitable estoppel may be invoked to defeat a defense that the action was not timely filed." *Levesque v. Clinton Cnty. N.Y.*, No. 8:14-cv-298 (GLS/CFH), 2015 WL 1924127, at *2 (N.D.N.Y. Apr. 28, 2015) (brackets omitted) (quoting *Russo v. Duprey*, No. 9:12-CV-1815 (LEK/ATB), 2014 WL 948851, at *1 (N.D.N.Y. Mar. 11, 2014) (citing *Abbas*, 480 F.3d at 642)); *see Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996); *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005). Equitable tolling may apply "where necessary to prevent unfairness to a plaintiff who is not at fault for h[is] lateness in filing." *Gonzalez v. Hasty*, 651 F.3d 318, 322 (2d Cir. 2011) (quoting *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 322 (2d Cir. 2004)). Thus, "[e]quitable tolling is an extraordinary measure that applies when plaintiff is *prevented from filing* despite exercising that level of diligence which could be reasonably be expected in the circumstances." *Id.* (emphasis in original) (quotation omitted).

Here, liberally construing the complaint, Plaintiff asks the Court to toll the statute of limitations because in *Porter II* he was advised that his "only recourse [was] to file[] a brand new [section 1983 action] [and] pay[] the filing fee making this extraordinary circumstances." (Dkt. No. 1 at 10.) To be sure, by Decision and Order in *Porter II* dated August 26, 2015, Judge D'Agostino held that Plaintiff was:

> not entitled to relief of any kind in this action, which has been
> closed for more than two years. By virtue of this action having
> been dismissed without prejudice, plaintiff is free to commence a
> new action by filing a complaint and paying the appropriate filing
> fee.

*Porter II*, Dkt. No. 43 at 2-3. Significantly, however, the District Court stated that "the issue of whether any new action would be timely is not presently before the Court and is, therefore, not

ripe for adjudication." *Id*. at 3 n.6 (citing *Hurd v. New York City Health and Hosp. Corp.*, No. 07 Civ. 3073, 2008 WL 2127659, at 3 (S.D.N.Y. May 20, 2008) (citing cases)).

Other than referencing the August 19, 2015, Decision and Order in *Porter II*, and making the cursory and general allegation of "extraordinary circumstances," Plaintiff has not explained how he was prevented from filing suit in this action. (Dkt. No. 1 at 10.) Further, Plaintiff failed to respond to the instant motion despite being afforded additional time in which to do so. (<u>See</u> Dkt. Nos. 34 and 35.)

Having carefully reviewed the entire record, the Court discerns no basis to invoke equitable tolling in order to salvage what are otherwise patently untimely claims. Indeed, as Defendants correctly note, in order to timely proceed with his claims arising from the January 27, 2009, cell extraction, Plaintiff need only have paid the filing fee within the generous timeframes set by the Courts in *Porter I* and *Porter II*. Rather than pay the filing fee, however, Plaintiff made the strategic decision to engage in protracted appellate litigation regarding his IFP status which prolonged the litigation of these claims and resulted in the untimeliness of the instant action. Further, the Court agrees with Defendants that even if Plaintiff claimed that he was unable to pay the filing fee in his prior actions due to indigence, Plaintiff's inability to obtain IFP status stems from his own history of frivolous litigation, and therefore, does not warrant equitable tolling. (*See* Dkt. No. 33-1 at 7-8.)

Based on the foregoing, Plaintiff's section 1983 claims against Defendants are barred by the statute of limitations. Therefore, the Court recommends that Defendants' motion be granted.

**C.     Claims against Remaining Defendants**

"A district court has the power to *sua sponte* dismiss claims against nonmoving defendants for failure to state a claim, as long as the plaintiff has been given an opportunity to be heard."  *Keitt v. City of New York*, No. 09 Civ. 5663(PKC)(DF), 2010 WL 3466175, at *11 (S.D.N.Y. Aug. 9, 2010) (citing *Whitfield v. O'Connell*, No. 09 Civ.1925(WHP), 2010 WL 1010060, at *18 n. 4 (S.D.N.Y. Mar. 18, 2010) (citing *Thomas v. Scully*, 943 F.3d 259, 260 (2d Cir. 1991))).  As noted above, Bellnier, Dunning, McGaw, Guard Doe #1, Guard Doe #2, Facteau, Barse, Sgt. Doe, Salls, Quinn, and Fairchild have not been served with process, and therefore, have not appeared in this action.  (*See* Dkt. Nos. 35 and 36.[6])

However, Plaintiff's Eighth Amendment excessive force and failure to intervene claims against Bellnier, Dunning, McGaw, Guard Doe #1, Guard Doe #2, Facteau, Barse, Sgt. Doe, Salls, and Quinn arise from the January 27, 2009, cell extraction, and therefore, would be subject to dismissal under the same statutes of limitations analysis discussed above.

Similarly, Plaintiff's Eighth Amendment medical care claim against Fairchild also arises from the January 27, 2009, cell extraction.  (Dkt. No. 1 at 12.)  Plaintiff claims that Fairchild denied him medical evaluation and treatment following the cell extraction on January 27, 2009, and again the next day.  *Id.*  Therefore, Plaintiff's claim against Fairchild also accrued on January 27, 2009, and for the reasons discussed above, is also time barred.[7]

---

[6]  On December 5, 2016, the Clerk reissued summons as to Bellnier, Dunning, McGaw, Guard Doe #1, Guard Doe #2, Facteau, Barse, Sgt. Doe, Salls, Quinn, and Fairchild.  (*See* Dkt. Nos. 35 and 36.)

[7]  The Court notes that in certain circumstances, the continuing violation doctrine has been applied to toll the governing statute of limitations in the context of section 1983 claims.  *See*

Because Plaintiff has had a fair opportunity to be heard on the statute of limitations issue, which equally affects his surviving claims against all Defendants, it is also recommend that the District Court *sua sponte* dismiss Plaintiff's section 1983 claims against Bellnier, Dunning, McGaw, Guard Doe #1, Guard Doe #2, Facteau, Barse, Sgt. Doe, Salls, Quinn, and Fairchild.

## D. Opportunity to Amend

Ordinarily, given Plaintiff's *pro se* status, the Court would recommend that he be given an opportunity to amend prior to an outright dismissal. *See Cuoco*, 222 F.3d 112. However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* Here, because of the bar imposed by the statute of limitations, amendment would be futile. *See Bloom v. U.S. Gov't.*, No. 02Civ.2352DABDF, 2003 WL 22327163, at *8 (S.D.N.Y. Oct. 10, 2013) (holding that because the plaintiff's claims were barred by statute of limitations, any attempt to be amend would be futile) (collecting cases). Therefore, the Court recommends dismissal without leave to amend.

---

*Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009) (finding the continuing violation doctrine can apply "when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs"). "To assert a continuing violation for statute of limitations purposes [in actions where the plaintiff has asserted an Eighth Amendment deliberate medical indifference claim], the plaintiff must allege both the existence of an ongoing policy of deliberate indifference to his . . . serious medical needs and some nontime-barred acts taken in furtherance of that policy." *Shomo*, 579 F.3d at 182 (quotation marks and original alterations omitted). Here, Plaintiff has not alleged the existence of an ongoing policy of deliberate indifference, nor any nontime-barred acts taken in furtherance of that policy. (*See generally* Dkt. No. 1.) Indeed, as the District Court noted on initial review, Plaintiff alleged "additional claims which appear to have arisen out of events which occurred no later than December 2011," and in any event, those claims did not survive *sua sponte* review. (Dkt. No. 7 at 4, 22.) Because the continuing violation doctrine does not apply in this case, Plaintiff's claim against Fairchild is untimely.

**E.      State Law Claims**

Plaintiff has also asserted state law tort claims of assault, battery, and medical malpractice.  (Dkt. No. 1 at 10.)  Inasmuch as the Court is recommending that all of Plaintiff's federal claims be dismissed, it is also recommended that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims without prejudice subject to refiling in state court and to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal of Plaintiff's federal claims without leave to amend.  *See* 28 U.S.C. § 1367(c)(3) (permitting a district court to decline supplemental jurisdiction where the "district court has dismissed all claims over which it has original jurisdiction"); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 120 (2d Cir.2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed).

**WHEREFORE**, based on the findings above, it is hereby

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 33) be **GRANTED**, and that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY WITHOUT LEAVE TO AMEND**; and it is further

**RECOMMENDED** that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims without prejudice subject to refiling in state court and to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal of Plaintiff's section 1983 claims without leave to amend; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.[8]  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated:  May 4, 2017
            Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[8]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2016 WL 4402029
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Teri Lomonoco, Plaintiff,
v.
Saint Anne Institute, Defendant.

1:15-CV-1163 (GTS/CFH)
|
Signed 08/18/2016

**Attorneys and Law Firms**

LUIBRAND LAW FIRM, PLLC, 950 New Loudon
Road, OF COUNSEL: KEVIN A. LUIBRAND, ESQ.,
Latham, NY 12110, Counsel for Plaintiff.

GIRVIN & FERLAZZO, PC, 20 Corporate Woods
Blvd., OF COUNSEL: DANIEL RUBIN, ESQ.,
PATRICK FITZGERALD, III, ESQ., SCOTT P.
QUESNEL, ESQ., Albany, NY 12211-2350, Counsel for
Defendant.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District
Judge

 **\*1** Currently before the Court, in this employment
discrimination action filed by Teri Lomonoco
("Plaintiff") against Saint Anne Institute ("Defendant"),
is Defendant's motion to dismiss the Third Cause of
Action in Plaintiff's Complaint for failure to state a claim
upon which relief can be granted pursuant to Fed. R. Civ.
P. 12(b)(6). (Dkt. No. 5.) For the reasons set forth below,
Defendant's motion is granted in part and denied in part.

**I. RELEVANT BACKGROUND**

 **A. Plaintiff's Complaint**
Generally, liberally construed, Plaintiff's Complaint
alleges as follows. Plaintiff is fifty-nine years old and was
employed as a special education teacher by Defendant.
(Dkt. No. 1, ¶ 9 [Pl.'s Compl.].) In 2014, Plaintiff was one
of the longest-tenured teachers, having been employed by
Defendant for thirty years. (Id., ¶ 11.) Throughout much
of her tenure, Plaintiff was the special education teacher

to whom the hardest and most-challenging students were
assigned because of her acute ability to track a path for
these students to achieve success. (Id., ¶ 12.) Plaintiff
was also the Chairperson for the Committee on Special
Education for ten years. (Id.)

At some point in 2013, Plaintiff began to observe a
deterioration in the standards at Saint Anne Institute,
including the tendency of the administration to violate
state education mandates in a manner that was harmful
to disabled students in need of supervision. (Id., ¶ 13.)
Initially, Plaintiff expressed her concerns informally to
administrators. (Id.) After receiving no response, Plaintiff
formally complained to administrators. (Id.) In March of
2014, Plaintiff wrote anonymous letters to both the New
York State Department of Education ("DOE") as well
as Defendant's Board of Directors to report violations of
New York State law and Defendant's failure to comply
with standards applicable to the education and housing
of students with disabilities. (Id., ¶¶ 14-17.) When these
problems continued, Plaintiff contacted the New York
State Justice Center ("Justice Center"), which is designed
for reporting improprieties with respect to children or
people with disabilities. (Id., ¶ 18.) Plaintiff's complaints to
the DOE and Justice Center were relayed to Defendant's
administration, and Plaintiff began to be retaliated against
while at work. (Id., ¶ 19.)

Specifically, on several occasions, Defendant's
administrators informed Plaintiff that they knew that she
had made the reports to the DOE and Justice Center.
(Id., ¶ 20.) Plaintiff's classroom assignments were then
terminated in a punitive manner multiple times without
notice or without her participation. (Id., ¶ 21.) Plaintiff
was also subjected to physical intimidation by certain
administrators which caused Plaintiff to be fearful for
her safety. (Id.) Certain administrators also yelled directly
in Plaintiff's face in such a manner as to cause a severe
emotional reaction witnessed by other administrators and
staff members. (Id., ¶ 22.) In June of 2014, Plaintiff
contacted the Justice Center to report these retaliatory
acts, causing one of Defendant's administrators to react
with "the most severe emotional outburst" towards
Plaintiff. (Id., ¶ 23.)

 **\*2** In September of 2014, on the day before school
was to start, Plaintiff was informed in writing that she
had been reassigned to a different position. (Id., ¶ 25.)
Thereafter, Plaintiff attended a meeting during the first

week of the school year, in which she was informed that she was being removed from her classroom of thirty years. (*Id.*, ¶ 26.) Plaintiff was relegated to an office where she was directed to be the designated photocopier of manuals for the "CORE Education Program," a task that would typically be assigned to an entry level clerk rather than an accomplished special education teacher. (*Id.*, ¶ 27.)[1] Plaintiff then learned that her assigned students had been reassigned to two teachers, each with less than one year of experience, and each of whom lacked certain certifications possessed by Plaintiff. (*Id.*, ¶ 28.)

[1]    The Complaint does not indicate if "CORE" is an acronym or is imply a reference to educational requirements.

Based upon the foregoing allegations, Plaintiff asserts the following three causes of action: (1) a cause of action claiming that Plaintiff was discriminated against on the basis of her age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.*; (2) a cause of action claiming that Plaintiff was discriminated against on the basis of her age in violation of the New York State Human Rights Law; and (3) a cause of action claiming that Plaintiff is a person subject to the mandatory reporting obligations under New York State Social Services Law § 413 due to her position as a teacher and that she was unlawfully retaliated against for fulfilling this obligation in violation of Social Services Law § 413 and New York State Labor Law § 740. (*Id.*, ¶¶ 30-44.) As stated above, Defendant's motion seeks to dismiss Plaintiff's third cause of action only.

**B. Parties' Arguments**

**1. Defendant's Memorandum of Law**

Generally, in its memorandum of law, Defendant argues that Plaintiff's Third Cause of Action should be dismissed because (1) Social Services Law § 413 does not provide for any independent right of action beyond what is already provided by Labor Law § 740, and (2) any claim under Labor Law § 740 is time-barred by the applicable one-year statute of limitations. (Dkt. No. 5, Attach. 3, at 6 [Def.'s Mem. of Law].)

More specifically, with regard to Plaintiff's claim under Social Services Law § 413, Defendant argues that Social Services Law § 413(1)(c) does not provide a private cause

of action for an employee who believes he or she has suffered unlawful retaliation for reporting maltreatment or abuse of a child. (*Id.*) Rather, Defendant argues that such a claim is to be filed pursuant to Labor Law § 740, which is New York's "whistleblower" statute. (*Id.* at 7.)

With regard to Plaintiff's claim under Labor Law § 740, Defendant argues that the claim accrued on the date that the alleged retaliatory action was taken against Plaintiff, i.e., when she was removed from her classroom and reassigned to a different position. (*Id.* at 7-8.) Defendant argues that, according to the Complaint, Plaintiff's reassignment occurred "in September of 2014 ... on the day before school was to start" and/or "during the first week of the school year." (*Id.* at 8.) In support of this argument, Defendant has submitted an affidavit from its Chief Financial Officer, who states that the first day of school of the 2014-2015 school year was September 3, 2014, and, therefore, "the day before school was to start" was September 2, 2014, and the first week of the school year was either the week of September 1 to September 5, 2014 (first partial week) or the week of September 8 to September 12, 2014 (first full week). (*Id.*) Defendant argues that, no matter which date is used, Plaintiff's Labor Law claim is untimely because the events in question accrued more than one year before she filed her Complaint on September 28, 2015. (*Id.*)

**2. Plaintiff's Opposition Memorandum of Law**

**\*3** Generally, Plaintiff asserts three arguments in opposition to Defendant's motion.

First, Plaintiff does not appear to contest Defendant's argument that Social Services Law § 413 does not create a private cause of action. Indeed, Plaintiff states that "Labor Law [§] 740 creates the private cause of action for retaliation when Defendant takes actions toward Plaintiff as a result of Plaintiff reporting improper actions toward children, under her Social Services Law [§] 413 obligations to report same," and that "Plaintiff's allegation is that Social Services Law [§] 413 is the law upon which Plaintiff based her reporting, and that she has pled the requirements of Labor Law [§] 740." (Dkt. No. 15, at 1 [Pl.'s Opp'n Mem. of Law].) Accordingly, the Court will treat Defendant's argument on this point as unopposed.

Second, Plaintiff argues that her claim is not time-barred for the following two reasons: (1) the Complaint alleges that other retaliatory actions occurred after September 1, 2014, such as when she was relegated to making copies of manuals for the "CORE Education Program" and her students were reassigned to other teachers; and (2) the retaliatory actions taken before the start of the school year are timely because they represent a continuing tort that tolls the statute of limitations until the last wrongful act occurred. (*Id.* at 3-5.)

Third, and finally, Plaintiff argues that, to the extent that the Court agrees with Defendant that her claim is untimely, she should be given leave to amend her Complaint. (*Id.* at 5.)

### 3. Defendant's Reply Memorandum of Law

Generally, Defendant asserts the following two arguments in reply to Plaintiffs' opposition memorandum of law.

First, Defendant argues that the allegations set forth in Paragraphs 27 and 28 of Plaintiff's Complaint do not constitute separate and distinct retaliatory acts that occurred within the statute of limitations. (Dkt. No. 18, at 6 [Def.'s Reply Mem. of Law].) Rather, Defendant argues that, at most, they represent the "continuing effects of earlier unlawful conduct." (*Id.*) More specifically, Defendant argues that Plaintiff's assignment to photocopying duties and the reassignment of her students to different teachers were the continuing effects and consequences of its decision to remove Plaintiff from her classroom, which occurred more than a year before she filed her Complaint. (*Id.*) Similarly, Defendant argues that the mere fact that the effects of retaliation are continuing does not make the retaliatory act itself a continuing one and, therefore, the continuing tort doctrine does not apply to Plaintiff's claim. (*Id.* at 7-8.)

Second, Defendant argues that Plaintiff's informal request to amend her Complaint must be denied because she has not complied with Fed. R. Civ. P. 15 and N.D.N.Y. L.R. 7.1(a)(4). (*Id.* at 8.)

### II. RELEVANT LEGAL STANDARD

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

**\*4** Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show [ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

**\*5** Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at

1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. [2]

[2] *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at \*1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint.... However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear

that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

## III. ANALYSIS

*\*6* After carefully considering the matter, Defendant's motion to dismiss Plaintiff's third cause of action on the basis that it is time-barred is granted in part and denied in part for the reasons set forth below.

"Allegations that a claim is barred by an applicable statute of limitations is an affirmative defense normally asserted in an answer. However, where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss for failure to state a claim." *Emps. Committed for Justice v. Eastman Kodak Co.*, 407 F. Supp. 2d 423, 438 (W.D.N.Y. 2005) (internal quotation marks and citations omitted); *see also Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.") "When choosing to raise the defense in a pre-answer motion, however, the defendant faces a 'higher burden.' ... A defendant presenting an affirmative defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *Eastman Kodak Co.*, 407 F. Supp. 2d at 438. Pursuant to this more-stringent standard, the facts supporting the defense must appear on the face of the complaint. *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015).

Here, the Complaint alleges that, "[i]n September of 2014, and more particularly, on the day before school was to start, plaintiff was informed, first in writing, that she had been reassigned to a different position." (Dkt. No. 1, ¶ 25 [Pl.'s Compl.].) Plaintiff then attended a meeting "during the first week of the school year, where she was informed that she was being removed from her classroom of thirty (30) years." (*Id.*, ¶ 26.) As discussed above in Part I.B.1. of this Decision and Order, Defendant offers its school calendar for 2014-2015, in order to establish the precise dates on which these alleged acts occurred. Because Plaintiff surely had notice of this calendar when she drafted her Complaint, she relies heavily on "the day before school was to start" and "the first week of the school year" in her Complaint, and she does not dispute the calendar's authenticity or accuracy, the Court finds the calendar to be integral to the Complaint. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *Hilton v. Bank of New York Mellon*, 15-CV-0667, 2016 WL 234851, at \*8 (N.D.N.Y. Jan 18, 2016) (Suddaby, C.J.).

However, it is not clear from the Complaint that the announced removal was actually effected during the first week of school (as opposed to having been effected subsequently). Moreover, it is not clear from the Complaint if the acts alleged in Paragraphs 27 and 28 of the Complaint constitute separate and distinct retaliatory acts or continuing effects of the removal. Under the circumstances, the Court finds that these issues are more properly resolved on a motion for summary judgment.

Turning to Defendant's first argument in its memorandum of law, to the extent Plaintiff's Third Cause of Action is based on Social Services Law § 413, that portion of the cause of action is dismissed. Defendant has met its lightened burden on this unopposed argument. Even if the Court were to subject this argument to the more-rigorous scrutiny appropriate for contested motions, it would reach the same conclusion. *See Rivera v. Cty. of Westchester*, 31 Misc. 3d 985, 991 (N.Y. Sup. Ct. Westchester Cty. April 1, 2011) (stating that "in the absence of a statutory provision permitting a private right of action, ... there is no private right of action for claims made pursuant to title 6 of article 6 of the Social Services Law" (citing *McLean v. City of New York*, 12 N.Y.3d 194, 200-01 [N.Y. 2009]); *Lara v. City of New York*, 187 Misc. 2d 882, 890-91 (N.Y. Sup. Ct. N.Y. Cty. Mar. 20, 2001) (stating that "[t]here is no evidence in the Social Services Law or otherwise that any applicable law or contract was

intended to create a private right of action for money damages; rather, a logical reading of the statute as a whole indicates otherwise"); *cf. Ingrao v. Cty. of Albany, N.Y.*, 01-CV-0730, 2006 WL 2827856, at *7 (N.D.N.Y. Oct. 2, 2006) (McAvoy, J.). [3]

[3]   The Court notes that (1) it would be futile to permit Plaintiff to amend Complaint to reflect her reliance on Social Services Law § 413 in her Third Cause of Action, and (2) in any event, Plaintiff has failed to submit a proposed Amended Complaint.

**\*7**  As for the remainder of Plaintiff's Third Cause of Action, that portion of the cause of action survives. The Court notes that this survival is a close question, given the Complaint's failure to identify the "state education mandates" (Dkt. No. 1, ¶ 13) whose violation Plaintiff was

allegedly disclosing or attempting to disclose for purposes of N.Y. Labor Law § 740(2)(a). However, the Court finds that this issue is more properly resolved on a motion for summary judgment.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion to dismiss the Third Cause of Action in Plaintiff's Complaint (Dkt. No. 5) is **GRANTED in part** and **DENIED in part** such that, to the extent that the Third Cause of Action alleges a claim under N.Y. Soc. Serv. Law § 413, that claim is dismissed.

**All Citations**

Slip Copy, 2016 WL 4402029

---

2007 WL 2932777
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

John BURDICK, Plaintiff,

v.

Willie JOHNSON, Jr., Jon Doyle, Trooper
Gauney, and Trooper Kaneg, Defendants.

No. 1:06-CV-1465 (LEK/RFT).
|
Oct. 4, 2007.

**Attorneys and Law Firms**

John Burdick, Eagle Bridge, NY, pro se.

Kelly L. Munkwitz, New York State Attorney General,
Albany, NY, for Defendants.

*MEMORANDUM-DECISION AND ORDER* [1]

[1]      For printed publication by the Federal Reporters.

LAWRENCE E. KAHN, U.S. District Judge.

### I. Background

**\*1** On December 6, 2006, Burdick commenced this
action. In his Complaint, Burdick asserts that, on or about
December 4, 2003, he "was arrested by the Defendants
under the pretext of his needing a psychological evaluation
[and that] [d]uring the course of this arrest, the Defendants
used excessive force to subdue Burdick, severely fracturing
his wrist." Complaint (Dkt. No. 1) at ¶ 1. Burdick asserts
causes of action under Section 1983 of Title 42 of the
United States Code ("42 U.S.C. § 1983") for application
of excessive force and false arrest. Complaint (Dkt. No. 1)
at ¶¶ 16-25. On April 2, 2007, a copy of the Summons and
Complaint was accepted on behalf of Defendant Trooper
Gauney by Sergeant Lewis of the New York State Police
at Trooper Gauney's place of employment and a copy
of the Summons and Complaint was mailed to Trooper
Gauney at his place of employment in an envelope that
"did not reflect that the mail was from an attorney or
process server." Certificate of Service (Dkt. No. 18, Att.#
1). Defendants move to dismiss the Complaint pursuant

to Rule 12(b)(6), contending that the Complaint must be
dismissed because the claims therein are barred by the
statute of limitations. In addition, Defendants contend
that, due to the failure to effect proper service pursuant
to Rule 4(e), Plaintiff did not achieve personal jurisdiction
over Trooper Gauney. *See* Mem. of Law (Dkt. No. 8,
Att.# 1). Burdick has opposed Defendants' motion. *See*
Aff. in Opp'n (Dkt. No. 18) at ¶¶ 2, 3.

### II. Discussion

#### A. *Standard of Law-Motion to Dismiss.*

In evaluating a Rule 12(b)(6) motion, the court accepts
the facts alleged in the complaint and "construe[s] all
reasonable inferences in the plaintiff's favor." *Hernandez
v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citations
omitted). A motion to dismiss based on a statute of
limitations defense should be granted "when the running
of the statute is apparent from the face of the complaint."
*Hussain v. Comm'r of Nassau County Police Dep't,* 368
F.Supp.2d 216, 217 (E.D.N.Y.2005) (citations omitted).
However, it must also be "beyond a doubt that plaintiff
can prove no set of facts in support of his claim which
entitle him to relief." *Cooper v. Parsky,* 140 F.3d 433,
440 (2d Cir.1998) (quoting *Conley v. Gibson,* 355 U.S.
41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Defendants
seek to dismiss Plaintiff's Complaint on the basis that the
statute of limitations has expired. For the reasons set forth
below, Defendants' motion is denied.

#### B. *Statute of Limitations.*

In actions accruing under 42 U.S.C. § 1983, the limitations
period to be used is "the general or residual statute for
personal injury actions." *Owens v. Okure,* 488 U.S. 235,
250, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). In New York,
the general limitation period for personal injury suits is
three years. N.Y. C.P.L.R. § 214(5) (2007). The limitation
periods for § 1983 actions accrue when a plaintiff "knows
or has reason to know" of the injury at issue. *Singleton
v. New York,* 632 F.2d 185, 191 (2d Cir.1980) (citations
omitted). Claims for false arrest generally accrue on the
date of the false arrest. *Id.* at 191. When the final day
of the period falls on a weekend or legal holiday, both
federal and state law operate to extend the period to the

next-occurring business day. *See* Fed.R.Civ.P. 6(a); N.Y. Gen. Constr. Law § 25-a(1) (2007) (establishing specific regulations for calculation of time periods).

**\*2** The Complaint, filed on December 4, 2006, asserts that the injury occurred on December 2, 2003. Defendants assert that the claim here was filed two days too late, and is therefore time-barred. Mem. of Law (Dkt. No. 8, Att.# 1). Defendants' reliance on *Pugh v. New York,* where the claim was found to be time-barred due to filing one day late, is misplaced. No. 01CV0129, 2002 U.S. Dist. LEXIS 2976, \*5-6 (E.D.N.Y. Jan. 15, 2002). In *Pugh,* the last possible date to file was January 8, 2001, which was a Tuesday, and the relevant period could not be enlarged. *See id.* Here, the three-year statute of limitations ended on December 2, 2006, which was a Saturday. The next-occurring business day was Monday, December 4, 2006, the day on which filing occurred. Accordingly, Burdick's claim was timely filed on the last day of the statutory period.

### C. *Personal Jurisdiction over Trooper Gauney.*

Trooper Gauney was served by a method that is not specifically enumerated in Rule 4 of the Federal Rules of Civil Procedure ("F.R.C.P."). The appropriate federal provision relating to service of Trooper Gauney is F.R.C.P. Rule 4(e), because Trooper Gauney is an individual within this judicial district. Service was effected upon Trooper Gauney through delivery to a responsible person at Trooper Gauney's place of employment, followed by a copy mailed to Trooper Gauney at the same place of employment in a plain envelope marked "personal and confidential." Although this method is not explicitly provided in F.R.C.P. Rule 4, Subsection (e)(1) provides that service may be effected "pursuant to the law of the state in which the district court is located." Fed.R.Civ.P. 4(e)(1). New York Civil Practice Law and Rules Section 308, Subdivision (2), provides that service may be accomplished by:

delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other ...

N.Y.C.P.L.R. § 308(2) (2007).

Because service on Trooper Gauney was appropriate under New York law, it was also proper under F.R.C.P. Rule 4(e). Therefore, personal jurisdiction over Trooper Gauney was appropriately established.

### III. Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED,** that the Defendants' Motion to dismiss (Dkt. No. 8) is **DENIED;** and it is further

**ORDERED,** that the Clerk serve a copy of this Order on the parties.

**\*3 IT IS SO ORDERED.**

### All Citations

Not Reported in F.Supp.2d, 2007 WL 2932777

---

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 1924127
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Andre LEVESQUE, Plaintiff,
v.
CLINTON COUNTY N.Y. et al., Defendants.

No. 8:14–cv–298 (GLS/CFH).
|
Signed April 28, 2015.

**Attorneys and Law Firms**

Andre Levesque, Springfield, MO, pro se.

### *MEMORANDUM–DECISION AND ORDER*

[GARY L. SHARPE](), Chief Judge.

### *I. Introduction*

**\*1** Plaintiff *pro se* Andre Levesque commenced this action against defendants Clinton County NY, John and Jane Does, Clinton County Correctional Facility, Sgt Dominy, and Sgt Gravelle,[1] presumably pursuant to [42 U.S.C. § 1983](),[2] alleging no discernable claims, but complaining generally of "conspiracy," "abuses," "slander," "torture," and "something sinister." (*See generally* Am. Compl., Dkt. Nos. 8, 9.) He seeks relief in the form of medical marijuana and one-hundred million dollars, "preferably in Euros." (*Id.* at 8.)

[1]     The Clerk is directed to amend the caption to reflect that the aforementioned defendants are parties to this action.

[2]     In his amended complaint, Levesque states that he "do[es] not know what statute to file under." (Am. Compl. at 1, Dkt. Nos. 8, 9 .)

In a Report–Recommendation and Order (R & R) issued on August 4, 2014, Magistrate Judge Christian F. Hummel, upon an initial review of Levesque's amended complaint pursuant to [28 U.S.C. §§ 1915]() and [1915A](), recommended that Levesque's amended complaint be dismissed without leave to amend. (Dkt. No. 11.) Pending are Levesque's objections to the R & R.[3] (Dkt. No. 12.)

For the reasons that follow, the court adopts the R & R in its entirety.

[3]     The court notes that Levesque has also filed a motion to appoint counsel. (Dkt. No. 14.) This motion is denied.

### *II. Background*

#### *A. Facts*

Levesque is an inmate, and, it seems, during the time relevant to his claims, was incarcerated at Clinton Correctional Facility. (*See generally* Am. Compl.) What is known about the factual underpinnings of Levesque's claims essentially ends there. Further, from what the court can glean from Levesque's amended complaint, many of the actions about which he complains occurred in 2009, including being held in isolation without a disciplinary report and being "slandered." (*Id.* at 3.) The rest of his amended complaint includes a hodgepodge of events which Levesque describes only in the most conclusory ways, without providing any factual context. For example, Levesque claims that "Sgt Gravelle led an ass[a]ult and Sgt Dominy helped him destroy evidence and cover up [a]buses," and that "[i]n January of 2013[he] was returned to [Clinton] ... by [H]omeland Security with internal injur[ie]s [that he] sustained during torture and [was] left for dead." (*Id* . at 3–5.)

#### *B. Procedural History*

Levesque filed a complaint on March 17, 2014, along with a motion for leave to proceed *in forma pauperis* (IFP). (*See generally* Compl., Dkt. No. 1; Dkt. No. 2.) In a prior R & R, filed on March 21, 2014, Judge Hummel granted Levesque's IFP application, but, after an initial review of Levesque's complaint pursuant to [28 U.S.C. §§ 1915]() and [1915A](), recommended that Levesque's complaint be dismissed with leave to amend. (Dkt. No. 3.) In so recommending, Judge Hummel noted that, given Levesque's utter failure to comply with basic pleading requirements, "it [was] impossible ... to decipher under what basis Levesque is attempting to bring suit, how the named defendant was involved, how Levesque was harmed, or what relief is being sought," and instructed Levesque, if he chose to file an amended complaint, "to allege specific facts sufficient to plausibly state that the named defendant deprived him of constitutional or statutorily protected rights." (*Id.* at 4–5.)

**\*2** This court adopted Judge Hummel's first R & R and instructed the Clerk to return the file to the court for further review upon the filing of an amended complaint. (Dkt. No. 4.) Thereafter, Levesque filed an amended complaint, which was returned to Judge Hummel for another initial review. Upon initial review of Levesque's amended complaint, Judge Hummel recommended that the amended complaint be dismissed, and, given its incurable deficiencies, that Levesque not be afforded a second opportunity to amend. (Dkt. No. 11 at 2–3.) Levesque then filed objections to the R & R, (Dkt. No. 12), which the court now considers.

### III. *Standard of Review*

Before entering final judgment, this court reviews report and recommendation orders in cases it has referred to a magistrate judge. If a party properly objects to a specific element of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo. See Almonte v. N.Y. State Div. of Parole,* No. Civ. 904CV484GLS, 2006 WL 149041, at \*3, \*5 (N.D.N.Y. Jan.18, 2006). In those cases where no party has filed an objection, only vague or general objections are made, or a party resubmits the same papers and arguments already considered by the magistrate judge, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.* at \*45.

### IV. *Discussion*

In his R & R, Judge Hummel recommended that Levesque's amended complaint be dismissed without leave to amend because Levesque again failed to meet the most basic pleading requirements and, to the extent that the court could extrapolate a cognizable claim, it occurred in 2009, and was time-barred under the three-year statute of limitations governing claims brought pursuant to § 1983. (Dkt. No. 11 at 2–3 (citing *Murphy v. Lynn,* 53 F.3d 547, 548 (2d Cir.1995).)

Here, construing his objections liberally, Levesque objects to Judge Hummel's application of the three-year statute of limitations and requests that the court extend the statute of limitations governing his claims that arose in 2009.

(Dkt. No. 12 at 2–3, 5–6.) Alternatively, Levesque seeks to amend his complaint a second time "to reflect only what transpired at [Clinton] ... from March 2012 [to the] present," and to add defendants. (*Id.* at 1, 4–7.) These are specific objections, which the court reviews *de novo. See Almonte,* 2006 WL 149049, at \*3, \*5.

First, regarding Levesque's argument concerning the application of the statute of limitations, federal courts borrow the state law personal injury statute of limitations period for purposes of filing § 1983 actions. *See Wallace v. Kato,* 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). In New York, unless the limitations period is tolled, a plaintiff must file his § 1983 civil rights action within three years of the accrual of each cause of action. *See Owens v. Okure,* 488 U.S. 235, 250–51, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *see also* N.Y. C.P.L.R. § 214(5). Generally, a cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Covington v. City of N.Y.,* 171 F.3d 117, 121 (2d Cir.1999) (internal quotation marks and citation omitted). However, "[i]n 'rare and exceptional' cases, the doctrine of equitable tolling or equitable estoppel may be invoked to defeat a defense that the action was not timely filed." *Russo v. Duprey,* No. 9:12–CV–1815, 2014 WL 948851, at \*1 (N.D.N.Y. Mar.11, 2014) (citing *Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir.2007)). Equitable tolling may apply where " 'necessary to prevent unfairness to a plaintiff who is not at fault for h[is] lateness in filing,' " as long as a plaintiff's factual allegations are "plead with some degree of specificity." *McFadden v. Wilhelm,* No. 03 Civ. 8341, 2007 WL 1225345, at \*8 (S.D.N.Y. Apr.24, 2007) (quoting *Veltri v. Bldg. Serv. 32B–J Pension Fund,* 393 F.3d 318, 322 (2d Cir.2004)). Here, Levesque essentially asks the court to toll the statute of limitations, arguing that he has "been systematically denied fair access to the courts," [4] and placed in isolation, which "has had [an immense] impact on [his] ability to prosecute any claims." (Dkt. No. 12 at 1–2.) However, aside from these conclusory and general allegations, Levesque has not explained how he was prevented from filing suit, and the court therefore declines to toll the limitations period. *See McFadden,* 2007 WL 1225345, at \*8 (holding that equitable tolling did not save the plaintiff's stale claims where he did not "give any specifics about[his] claim that he was unable to file suits related to his alleged constitutional violations while in [the special housing unit]").

4    Seemingly, Levesque also indicates, for the first time, that he has a First Amendment access to the courts claim, (Dkt. No. 12 at 2–3, 6)—although there are not even murmurings of such a claim in either his complaint or amended complaint. However, "[i]t is well settled that a litigant may not raise new claims not contained in the complaint ... in objections filed in response to a Magistrate Judge's report and recommendation." *Bermudez v. Waugh,* No. 9:11–CV–0947, 2013 WL 654401, at \*6 (N.D.N.Y. Feb.21, 2013). Accordingly, the court does not consider that potential claim here.

**\*3** Second, Levesque requests leave to amend his complaint a second time to include only claims that arose after March 2012 and to add defendants. (Dkt. No. 12 at 4–5, 6.) While leave to amend a complaint should be freely given "when justice so requires," *Fed.R.Civ.P. 15(a)(2),* it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007). Further, although courts should generally grant *pro se* plaintiffs leave to amend "at least once," they should do so only "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (internal quotation marks and citation omitted). Here, the court declines to grant Levesque leave to amend. As an initial matter, he has already been given one opportunity to amend, and was instructed to provide more factual detail, but failed to do so. (Dkt.Nos.3, 4.) Moreover, the court is not satisfied, after a liberal reading of Levesque's amended complaint, that a valid claim could possibly be stated. Further, although Levesque states that he wishes to add defendants, he neither identifies those defendants nor provides any facts related to their alleged wrongdoing. (Dkt. No. 12 at 1, 5.) Accordingly, the court declines to

grant Levesque leave to file a second amended complaint, and the portion of the R & R recommending dismissal without leave to amend is adopted.

Finally, consistent with the standards set forth in *Almonte, 2006 WL 149049, at \*3–5,* the court has carefully reviewed the remainder of the R & R for clear error, found none, and adopts it in its entirety.

## V. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Christian F. Hummel's August 4, 2014 Report–Recommendation and Order (Dkt. No. 11) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Levesque's amended complaint (Dkt.Nos.8, 9) is **DISMISSED** without prejudice; and it is further

**ORDERED** that Levesque's motion to appoint counsel (Dkt. No. 14) is **DENIED;** and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 1924127

---

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 948851
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Anthony Crivello RUSSO, Plaintiff,
v.
Stephen DUPREY; et al., Defendants.

No. 9:12–CV–1815 (LEK/ATB).
|
Signed March 11, 2014.

**Attorneys and Law Firms**

Anthony Russo, Coxsackie, NY, pro se.

### *DECISION AND ORDER*

[LAWRENCE E. KAHN](), District Judge.

## I. INTRODUCTION

**\*1** Plaintiff's Amended Complaint is before the Court for review pursuant to [28 U.S.C. §§ 1915(e)(2)(B)]() and [1915A(b)](). Dkt. No. 13 ("Amended Complaint"). Plaintiff initially filed a Complaint asserting claims pursuant to [42 U.S.C. § 1983](), together with an Application to proceed *in forma pauperis.* Dkt. Nos. 1; 2 ("IFP Application"). The Court granted Plaintiff's IFP Application, but dismissed the Complaint for failure to state a claim pursuant to [28 U.S.C. §§ 1915(e)]() and [1915A](). Dkt. No. 8 ("June Order"). Plaintiff then filed an Amended Complaint. Am. Compl. For the following reasons, the Court dismisses this action pursuant to [28 U.S.C. §§ 1915(e)(2)(B)]() and [1915A(b)]() for failure to state a claim upon which relief may be granted.

## II. DISCUSSION

### A. Review of the Amended Complaint

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to [28 U.S.C. §§ 1915(e)]() and [1915A]() was discussed at length in the June Order and will not be restated here. *See* June Order at 2–4. Taking into account Plaintiff's *pro se* status, the Court construes the allegations in the Amended Complaint liberally. *See, e.g.,* [Haines v. Kerner, 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)]() (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"). For the reasons

discussed below, the Amended Complaint does not cure the deficiencies identified in the original Complaint.

The Amended Complaint alleges that (1) Defendants Molinar and Morgiewicz created the "unconstitutional [pre-sentence report]" ("PSR") during Plaintiff's pre-sentence interview at Middletown, New York, on July 10, 2005, in connection with Plaintiff's criminal trial and conviction; (2) Defendants Duprey and Robert violated Plaintiff's Fourteenth Amendment rights by using the PSR at Plaintiff's parole hearings at Bare Hill Correctional Facility on April 17, 2008 and at Great Meadow Correctional Facility on October 12, 2010; (3) Defendants violated Plaintiff's Eighth Amendment rights by using the PSR to deny Plaintiff access to prison programs; (4) the PSR violated Plaintiff's Fifth Amendment rights by exposing him to double jeopardy; and (5) the PSR denied Plaintiff meaningful right to a jury trial in contravention of Plaintiff's Sixth and Seventh Amendment rights. Am. Compl. at 5–7. As relief, Plaintiff requests an award of compensatory and punitive damages, an order directing that the PSR be removed from his inmate record, and his "immediate release." Am. Compl. at 7.

### *1. Claims That Arose Prior to December 3, 2009*

In [§ 1983]() actions, the applicable statute of limitations is the "general or residual [state] statute [of limitations] for personal injury actions." *[Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir.2002)]()* (quoting *[Owens v. Okure, 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989)]()*). In New York, that statute of limitations is three years. [Pearl, 296 F.3d at 79; *see also* N.Y. C.P.L.R. 214(5)](). Although state law provides the relevant limitations period, federal law determines when a [§ 1983]() action accrues, which is "when the plaintiff knows or has reason to know of the harm." *[Connolly v. McCall, 254 F.3d 36, 41 (2d Cir.2001)]()*. Thus, a claim accrues when a "plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." *[Singleton v. City of New York, 632 F.2d 185, 192 (2d Cir.1980)]()*. In "rare and exceptional" cases, the doctrine of equitable tolling or equitable estoppel may be invoked to defeat a defense that the action was not timely filed. *See [Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir.2007)]()*.

**\*2** Plaintiff's original Complaint was filed, at the earliest, on December 3, 2012. [1] Compl. at 7. Thus, the claims that arose prior to December 3, 2009–that Defendants

Molinar and Morgiewicz created the PSR on July 10, 2005 and Defendants Duprey and Robert used the PSR at Plaintiff's parole hearing on April 17, 2008–are dismissed as untimely filed. While typically a court should not dismiss a claim as time-barred without providing a *pro se* plaintiff with notice and an opportunity to be heard as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered timely filed, *see Abbas,* 480 F.3d at 640–41, Plaintiff has also failed to state a claim upon which relief could be granted.

1    Under the "prison mailbox rule," the date of filing is deemed to be the date that the prisoner delivered his complaint to a prison guard for mailing to the court; absent other evidence, this is presumed to be the date that the complaint was signed. *See Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Noble v. Kelly,* 246 F.3d 93, 97 (2d Cir.2001). Plaintiff signed his original Complaint on December 3, 2012, see Compl. at 7, and, in light of Plaintiff's *pro se* status, the Court will presume that Plaintiff "brought" this action on that date.

### 2. Creation or Use of a False Record

To support his claims, Plaintiff submits a portion of his state criminal sentencing minutes. *See* Am. Compl. at 7 (alleging that the statement in his PSR that he "was convicted of confronting a police officer with a weapon was erroneous"); Dkt. No. 13–1 at 1 (claiming that sentencing minutes show that plaintiff was convicted of " 'Constructive Possession of a weapon' not Criminal Possession of [a] weapon" and that he was "exonerated" on the charge of "confronting a police officer with a weapon").

However, even if Plaintiff could prove that the PSR contained false or inaccurate information, his claim would nevertheless fail because, as the Court noted in the June Order:

> The Second Circuit has not recognized that prisoners have a constitutional right to have incorrect information expunged from their files. *LaBounty v. Coombe,* 208 F.3d 203 (2d Cir.2000). Thus, Plaintiff has no right to have the PSR removed from his inmate records.

June Order at 9. Finally, probation officers are entitled to absolute immunity for their role in preparing a PSR. *See Hili v. Sciarrotta,* 140 F.3d 210, 214 (2d Cir.1998).

As a result of the foregoing, Plaintiff's requests to expunge the PSR from his records, or to obtain damages from Defendants for the allegedly false PSR, are dismissed pursuant to 28 U.S.C. §§ 1915(e) (2)(B) and 1915A.

### 3. *Plaintiff's Fifth, Sixth, Seventh, Eighth, and Fourteenth Amendment Claims*

Plaintiff reasserts his claims that the use of the allegedly false PSR to deny him prison programs violated: (1) his right to be free from Double Jeopardy under the Fifth Amendment; (2) his right to trial by jury under the Sixth and Seventh Amendments; (3) his right to be free from cruel and unusual punishment under the Eighth Amendment; and (4) his Fourteenth Amendment due process rights. He provides no additional factual detail. For the same reasons set forth in the June Order, *see id.* at 5–9, Plaintiff's claims regarding the use of the PSR to deny Plaintiff prison programs are dismissed in their entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

### 4. *Defendants Elovich, Ross, and Crangle*

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983." *Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir.2010); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (citations omitted). To prevail in a § 1983 action against an individual, a plaintiff must show a tangible connection between the constitutional violation and the particular defendant. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986). A complaint that fails to allege a defendant's personal involvement in the alleged unlawful conduct is "fatally defective on its face," *Alfaro Motors, Inc. v. Ward,* 814 F.3d 883, 886 (2d Cir.1987), and thus appropriate for dismissal by the Court pursuant to 28 U.S.C. § 1915(e).

**\*3** Upon review of the Amended Complaint, the Court notes that Elovich, Ross, and Crangle are named as Defendants, but are not mentioned anywhere in the body of the Amended Complaint. *See* Am. Compl. In the absence of factual allegations sufficient to plausibly suggest that these individuals were personally involved in conduct violative of Plaintiff's constitutional or statutory rights, the Amended Complaint fails to state a cognizable

claim against them. *See Cipriani v. Buffardi,* No. 06–CV–0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff."). As a result, Elovich, Ross, and Crangle are dismissed from this action pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

*5. Request for Immediate Release*

In addition to requesting monetary damages and expungement of his PSR from his inmate records, the Amended Complaint now also requests Plaintiff's "immediate release." Am. Compl. at 7. Plaintiff does not explain the basis for his request for his release from incarceration. In any event, such relief is not available in a § 1983 action. "[H]abeas corpus-not a § 1983 action—provides the sole federal remedy where a state prisoner challenges the fact or duration of his imprisonment." *Channer v. Mitchell,* 43 F.3d 786, 787 (2d Cir.1994) (citing *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)). Therefore, Plaintiff's claim seeking his "immediate release" is dismissed.

**B. Opportunity to Amend**

After reviewing Plaintiff's Amended Complaint, the Court cannot discern a factual or legal basis for this action. Insofar as Plaintiff seeks his "immediate release," that claim is dismissed without prejudice. *See Amaker v. Weiner,* 179 F.3d 48 (2d Cir.1999) (stating that dismissal under *Preiser* is without prejudice; if a plaintiff's

conviction or sentence is later declared invalid or called into question by a federal court's issuance of a writ of habeas corpus, the suit may be reinstated). For the reasons set forth above and in the June Order, and because Plaintiff has already had an opportunity to amend his claims, the Court finds the flaws in the remainder of the Amended Complaint to be substantive, rather than merely formal. Thus, leave to amend would be futile, and the Court dismisses these claims with prejudice. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *see also Pucci v. Brown,* 423 F. App'x 77, 78 (2d Cir.2011).

**III. CONCLUSION**

Accordingly, it is hereby:

**ORDERED,** that Plaintiff's claim seeking his "immediate release" is **DISMISSED without prejudice;** and it is further

**ORDERED,** that the remainder of the Amended Complaint (Dkt. No. 13) is **DISMISSED with prejudice.** The Clerk is directed to enter judgment in favor of the Defendants and close this case; and it is further

**ORDERED,** that the Clerk serve a copy of this Decision and Order on Plaintiff.

**\*4 IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 948851

---

                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**  © 2017 Thomson Reuters. No claim to original U.S. Government Works.    3

Hurd v. New York City Health and Hosp. Corp., Not Reported in F.Supp.2d (2008)

2008 WL 2127659

2008 WL 2127659
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Leslie W. HURD, Plaintiff,

v.

NEW YORK CITY HEALTH AND
HOSPITAL CORP., Defendant.

No. 07 Civ. 3073(JSR).
|
May 20, 2008.

### ORDER

JED S. RAKOFF, District Judge.

**\*1** On April 8, 2008, the Honorable Theodore H. Katz, United States Magistrate Judge, issued a Report and Recommendation in the above-captioned matter recommending that the Court grant defendant's motion to dismiss.

Plaintiff has failed to file any objection to the Report and Recommendation, and, for that reason alone, has waived any right to further appellate review. *See Thomas v. Arn,* 474 U.S. 140, 147-48 (1985); *Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002); *Spence v. Superintendent, Great Meadow Corr. Facility,* 219 F.3d 162, 174 (2d Cir.2000). Accordingly, the Court hereby adopts the Report and Recommendation, and, for the reasons stated therein, dismisses the action without prejudice. Clerk to enter judgment.

SO ORDERED.

### REPORT AND RECOMMENDATION

THEODORE H. KATZ, United States Magistrate Judge.

**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

**TO: HON. JED S. RAKOFF, UNITED STATES DISTRICT JUDGE.**

Plaintiff Leslie Hurd filed the Complaint in this action on April 16, 2007, alleging that his employer, the New York City Health and Hospitals Corporation ("HHC" or "Defendant") discriminated against him on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* The action was referred to this Court for general pretrial supervision and Reports and Recommendations on dispositive motions, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). Presently before the Court is a motion to dismiss, pursuant to Rules 12(b) and (c) of the Federal Rules of Civil Procedure, to which Plaintiff has submitted no opposition. For the reasons that follow, the Court recommends that the motion be granted.

### DISCUSSION

I. *Failure to Properly Effect Service*
The Complaint in this action was filed on April 16, 2007. Because Plaintiff is proceeding *pro se,* he was provided with instructions for service of process by the Court's *Pro Se* Office, This Court also advised him in a letter, dated May 17, 2007, that he was required to serve Defendant with the Summons and Complaint by no later than August 14, 2007, or the Complaint would be dismissed pursuant to Rule 4(m), Fed.R.Civ.P. Plaintiff did not serve Defendant with process until August 16, 2007, and, even then, merely served Defendant with the Summons and failed to serve Defendant with the Complaint. (*See* Declaration of John Blaha in Support of Defendant's Motion to Dismiss the Complaint, dated Oct. 30, 2007 ("Blaha Decl."), ¶¶ 4-7 & Ex. B.)

Defendant moves to dismiss pursuant to Rules 12(b)(2)(4)and (5), as well as Rule 12(c), Fed.R.Civ.P., asserting lack of jurisdiction over Defendant, insufficiency of process, and insufficiency of service of process. Under Federal Rule of Civil Procedure 4(c)(1), "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)," which is no later than 120 days after the filing of the complaint. Rule 4(m) provides, in pertinent part:

> **\*2** If a defendant is not served within 120 days after the complaint is filed, the court-upon motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff

Hurd v. New York City Health and Hosp. Corp., Not Reported in F.Supp.2d (2008)

2008 WL 2127659

shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

Although Plaintiff served the Summons two days beyond the 120-day period, there is a letter in the file indicating that Plaintiff attributes this delay to the fact that his mother had been hospitalized. This does not constitute "good cause" for the delay in filing. *See Naglieri v. Valley Stream Central High Sch. Dist.,* No. 05 Civ.1989(TCP), 2006 WL 1582144, at *2 (E.D.N.Y. May 26, 2006) (good cause requires "diligent attempts" to effect service, which are thwarted by exceptional circumstances beyond a party's control; ignorance of the rules, inadvertence, or mistake do not constitute good cause); *McKibben v. Credit Lyonnais,* No. 98 Civ. 3358(LAP), 1999 WL 604883, at *3 (S.D.N.Y. Aug. 10, 1999) ("Good cause or excusable neglect is generally found only in exceptional circumstances where plaintiff's failure to serve process in a timely manner was the result of circumstances beyond his control."); *Scally v. Daniluk,* No. 96 Civ. 7548(KMW), 1997 WL 639036, at *2 (S.D.N.Y. Oct. 15, 1997) (plaintiff's involvement in automobile accident did not constitute "good cause" for failure to file within 120-day period). *See also Jonas v. Citibank,* 414 F.Supp.2d 411, 416 (S.D.N.Y.2006) ("a mistaken belief that service of process was proper does not constitute good cause"). But, even assuming that Plaintiff's after-the-fact excuse constituted "good cause" for the late service, [1] Plaintiff has failed to dispute or explain the fact that he never served Defendant with the Complaint. Thus, he has failed to effect service of process on Defendant, as required by Rule 4(c), Fed.R.Civ.P. Moreover, he has not attempted to justify his failure, and has not requested additional time in which to serve Defendant. Instead, he has failed to respond in any fashion to Defendant's motion.

[1]    In fact, even in the absence of "good cause" the Court has the discretion to extend the time for service of process, although it need not do so. *See Henderson v. United States,* 517 U.S. 654, 662, 116 S.Ct. 1638, 1643 (1996); *Zapata v. City of New York,* 502 F.3d 192, 196-97 (2d Cir.2007) (district courts have discretion to extend time for effecting service, even in the absence of a showing of good cause); Rule 4(m), Fed.R.Civ.P.

Accordingly, Defendant's motion to dismiss should be granted. *See Toner v. Suffolk County Water Auth.,* 220

F.R.D. 20, 22 (E.D .N.Y.2004) (where plaintiff failed to serve the summons and complaint within 120 days, causing the ninety-day Title VII statute of limitations to expire, court held: "[P]laintiff, who is proceeding pro se, received due notice of this motion and still failed to provide the Court with any arguments, equitable or otherwise, that addressed the merits of this motion. In the absence of any such argument, the Court is compelled by both the law and the undisputed procedural facts to [dismiss the action with prejudice].").

## II. *Dismissal With or Without Prejudice*

Normally, when a plaintiff fails to effect service in compliance with Rule 4, dismissal is without prejudice. *See* Fed.R.Civ.P. 4(m). Defendant argues in the instant case, however, that this action should be dismissed with prejudice because any new-filed action would be time-barred.

**\*3** Under Title VII, a plaintiff is required to file his action within ninety days of receiving a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f) (1); *Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 525 (2d Cir.1996). This ninety-day period is subject to equitable tolling, and courts have recognized that after a complaint is filed, the limitations period is tolled during the 120-day period allowed for effecting service of process. *See Frasca v. United States,* 921 F.2d 450, 451 (2d Cir.1990) ("the filing of the complaint does not toll the applicable statute of limitations beyond the 120-day period provided by Fed.R.Civ.P. 4(j)"); *Clyburne v. Center for Comprehensive Health Practice, Inc.,* No. 04 Civ. 6695(LTS)(DFE), 2006 WL 1559238, at *3 (S.D.N.Y. June 5, 2006); *Ocasio v. Fashion Inst. of Tech.,* 86 F.Supp.2d 371, 375 (S.D.N.Y.2000). But, "if service is not complete by the end of the 120 days [or the end of an extension granted by the court], ... the governing statute of limitations again becomes applicable, and the plaintiff must refile prior to termination of the statute of limitations period." *Clyburne,* 2006 WL 1559238, at *3 (quoting *Frasca v. United States,* 921 F.2d 450, 453 (2d Cir.1990)). *See also Amnay v. Del Labs,* 117 F.Supp.2d 283, 287 (E.D.N.Y.2000) ("While the filing of a complaint tolls the statute of limitations, failure to complete service of the summons ... within 120 days as required by Rule 4(m) ends the tolling period, and the statute of limitations once again begins to run."); *Ocasio,* 86 F.Supp.2d at 376 ("[I]f a plaintiff fails to effect service during the 120 days allotted by Rule 4(m), then the statute of limitations for

Hurd v. New York City Health and Hosp. Corp., Not Reported in F.Supp.2d (2008)

2008 WL 2127659

the underlying claim again becomes applicable, and may serve to bar the claim if the statute runs before the plaintiff files another complaint.").

In the instant case, Plaintiff filed his Complaint on April 16, 2007, approximately 78 days after he received the right-to-sue letter from the EEOC, on or about January 28, 2007. Thus, by the time the Complaint was filed he had only about twelve days remaining before the statute of limitations expired. Assuming the statute of limitations was tolled for the next 120 days, it resumed running on or about August 14, 2007, and would have expired twelve days later, on August 26, 2007. Thus, the filing of any new action arising out of the facts alleged in Plaintiff's original EEOC complaint is likely to be time-barred. *See Amnay, 117 F.Supp.2d at 287* (denying any further extension of time to properly serve defendants because, even with tolling for the period to serve under *Rule 4(c)*, ninety-day statute of limitations had expired without securing personal jurisdiction over the defendants).

Nevertheless, the Court recommends that this action be dismissed without prejudice, as is the usual form of dismissal under *Rule 4(m)*. While it is likely that a subsequent action arising out of the same facts as this action will be time-barred, there remains the possibility that, in a subsequent action, Plaintiff could argue for, and justify, equitable tolling of the ninety-day statute of limitations. That issue is not presently before the Court and is therefore not ripe for adjudication. *See Egbuna v. Syracuse City Sch. Dist.,* No. 05 Civ. 112(NAM) (GHL), 2006 WL 2792744, at *3-4 (N.D.N.Y. Sept. 27, 2006 (dismissing Title VII action without prejudice because of failure to properly serve summons and complaint within period granted for service, even though the statute of limitations would bar the plaintiff from refiling the action); *McKibben,* 1999 WL 604883, at *4 (dismissal without prejudice proper, even if it occurs after the expiration of the applicable statute of limitations period); *Stephens v. Metro. Transp. Auth. Inspector Gen.'s Office,* No. 90 Civ. 3980(LLS), 1991 WL 84540, at *3 (S.D.N.Y. May 14, 1991) ("A dismissal under *Rule 4(j)*, although technically without prejudice, may effectively bar plaintiff's claim, as any refiling of the Title VII

claim may be time-barred."); *Ocasio,* 86 F.Supp.2d at 377 (original action where service was not effected within 120 days dismissed without prejudice, but in subsequent action, where the plaintiff proffered no reasons for equitable tolling, the action was dismissed with prejudice). *But see Naglieri,* 2006 WL 1582144, at *5 (dismissing complaint with prejudice where there had not been proper service of process, where claims would be time-barred in subsequent action; plaintiff had been heard on issue of whether a further extension of time for service of process was justified, and court denied such an extension); *Toner,* 220 F.R.D. at 22 (dismissing case with prejudice where statute of limitations had expired and plaintiff had not proffered any reason why the statute of limitations should be tolled).

## CONCLUSION

**\*4** For the reasons set forth above, this Court respectfully recommends that this action be dismissed without prejudice, pursuant to *Rule 4(m), Fed.R.Civ.P.*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this report to file written objections. *See also* Fed.R.Civ.P. 6(a) and (d). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. Failure to file objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Am,* 474 U.S. 140, 147-48, 106 S.Ct. 466, 471 (1985); *Mario v. P & C Food Mkts., Inc.,* 313 F.3d 758, 766 (2d Cir.2002); *Spence v. Superintendent,* 219 F.3d 162, 174 (2d Cir.2000); *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1999) (per curiam).

### All Citations

Not Reported in F.Supp.2d, 2008 WL 2127659

2010 WL 3466175
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.

Devin KEITT, Plaintiff,
v.
The CITY OF NEW YORK; John Henry Doe as Commissioner of the New York City Police Department; Andy Seewald, Pete Massa, John Doe # 2 Through 14, as Members of the New York City Police Department, in Their Individual and Official Capacities, Defendants.

No. 09 Civ. 5663(PKC)(DF).
|
Aug. 9, 2010.

**Attorneys and Law Firms**

Mr. Devin Keitt, Elmira, NY, pro se.

**REPORT AND RECOMMENDATION**

DEBRA FREEMAN, United States Magistrate Judge.

**\*1 TO THE HONORABLE P. KEVIN CASTEL, U.S.D.J.:**

In this action, *pro se* plaintiff Devin Keitt ("Plaintiff") alleges that, on June 8, 2005, he was racially profiled, falsely arrested and imprisoned, subjected to suggestive and tainted identification procedures and a conspiracy to manufacture false charges, and denied medical treatment, all in violation of his First, Fourth, Fifth, Sixth, Eighth and 14th Amendment rights and Article I of the New York State Constitution. The defendants that have, to date, been served and appeared in this case —the City of New York (the "City"), and Police Commissioner Raymond Kelly (named herein as "John Henry Doe, as Commissioner of the New York City Police Department")[1]—now move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the Complaint on a number of grounds, including that Plaintiff's claims are barred by the applicable statutes of limitations. For the reasons set forth

herein, I recommend that the pending motion to dismiss (Dkt.14) be granted and that the Complaint be dismissed as to the moving defendants. Further, because Plaintiff's claims against the remaining defendants would be subject to dismissal for the same reasons, I also recommend that the Court *sua sponte* dismiss the Complaint as to those defendants as well, even if they have not yet appeared in the action.

1    Raymond Kelly is the current Commissioner of the New York City Police Department. (*See* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dated Oct. 26, 2009 ("Def.Mem.") (Dkt.15), at 1 n. 1.)

**BACKGROUND**[2]

2    For purposes of this motion, any facts set forth herein are taken primarily from Plaintiff's Complaint, dated May 27, 2009, materials annexed thereto, and statements made by Plaintiff on the record in telephone conferences before this Court on November 13, 2009, January 15, 2010, February 2, 2010, and March 19, 2010.

**A.** *Plaintiff's Arrest, Incarceration, and Legal Assistance from Another Inmate*
According to the Complaint, Plaintiff was arrested on June 8, 2005, by officers of the New York City Police Department, including defendants Andy Seewald ("Seewald") and Pete Massa ("Massa"), in connection with the robbery of a gas station. (*See* Complaint dated May 27, 2009 ("Compl.") (Dkt.2) at ¶¶ 11–58.) Plaintiff was charged with Robbery in the First Degree, among other related charges (*see* Plaintiff's Rap Sheet, dated July 11, 2007 ("Rap Sheet"), attached as Ex. A1 to Compl.), and was convicted by a jury on February 7, 2006. (*See id.* at 17.) Plaintiff is currently incarcerated at Elmira Correctional Facility ("Elmira"). (*See* Transcript of Telephone Conference before this Court, dated Mar. 19, 2010 ("3/19/10 Tr.") (Dkt.25) at p. 10, l. 17.)

Previously, while incarcerated at Upstate Correctional Facility, Plaintiff met another inmate, named Bruce M. King ("King"). (*See* Transcript of Telephone Conference before this Court, dated Nov. 13, 2009 ("11/13/09 Tr.") (Dkt.23) at p. 10, ll. 10–21 .) On January 21, 2009, Plaintiff informed King that he "was dyslexic, [and]

had not been able to acquire assistance from New York State Department of Correctional Services (DOCS) Law Library." (*See* Affidavit/Affirmation of Bruce M. King, sworn to May 12, 2009 ("King.Aff."), attached as Attachment A to Compl., at ¶ 1.) According to King, Plaintiff asked him to read Plaintiff's appellate brief and "provide[ ] a verbal synopsis of its contents." (*See id.* at ¶ 2.) On February 17, 2009, Plaintiff asked King to read and summarize Plaintiff's reply brief on appeal, and again King did so. (*See id.* at ¶ 3.) Between February 15 and 21, 2009, King requested and obtained all documents related to Plaintiff's criminal conviction. (*See id.* at ¶ 4.) On February 23, 2009, King told Plaintiff that "his arrest was in violation of [the] First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, and about [a] Police cover-up," and explained to Plaintiff "the fraud on behalf of the prosecution." (*Id.* at ¶¶ 5–6.)

**\*2** At King's suggestion, Plaintiff filed an Inmate Grievance Complaint with DOCS on February 23, 2009. (*See id.* at ¶ 7.) In his grievance complaint, Plaintiff asked the law library to help him prepare his Section 1983 and Article 78 claims because he was learning disabled, could not read or write, and had a deadline. (*See* Inmate Grievance Complaint # UST–38392–09 dated Feb. 23, 2009, attached as Ex. A1 to Compl.) Further, on February 24, 2009, Plaintiff sought assistance from this Court's *Pro Se* Office. (*See* King Aff. at ¶ 9; Letter to *Pro Se* Clerk from Plaintiff, attached as Ex. A2 to Compl.) The *Pro Se* Office responded on March 4, 2009, enclosing the forms Plaintiff needed to initiate an action pursuant to 42 U.S.C. § 1983. (Letter to Plaintiff from *Pro Se* Office Clerk M. Santiago, dated Mar. 4, 2009, attached as Ex. A2 to Compl.)

### B. *Plaintiff's Complaint and the Instant Motion*

On May 27, 2009, with King's assistance, Plaintiff filed his Complaint in this action,[3] asserting putative claims under 42 U.S.C. §§ 1981, 1983, 1985 and 1986, and the state constitution.[4] On October 26, 2009, the City and Commissioner Kelly (together, "Defendants") filed their motion to dismiss the Complaint. Construing Plaintiff's claims as arising under Section 1983 and state law, Defendants argued, *inter alia,* that Plaintiff's claims are time-barred by the applicable statutes of limitations. (*See* Def. Mem. at 2, 5–7.) In particular, Defendants argued that Plaintiff's claims accrued at the time of his arrest

in 2005, but that he did not file his Complaint until nearly four years later, in 2009, well outside the three-year limitations period applicable to Section 1983 claims and the one–year–and–90–day limitations period applicable to state claims against the City or its employees. (*See id.* at 6–7.)

[3]  Under the so-called "prison mailbox rule," *see Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), a *pro se* prisoner's papers are deemed filed when they are handed over to prison officials for forwarding to the court. Therefore, although Plaintiff's Complaint was not entered on the Court's docket until June 1, 2009, the Court will consider it to have been filed as of May 27, 2009, the date it was signed by Plaintiff. *See, e.g., Luna v. Artus,* No. 10 Civ. 2565(PKC)(KNF), 2010 U.S. Dist. LEXIS 60927, at *2 n. 1 (S.D.N.Y. June 18, 2010).

[4]  Plaintiff's Complaint also cited 42 U.S.C. § 1988 (*see* Compl. at ¶ 1), which does not create an independent right of action, but rather provides, *inter alia,* that the federal courts' jurisdiction in federal civil rights actions "shall be exercised and enforced in conformity with the laws of the United States" or, in cases where federal statutory law is "not adapted to the object, or [is] deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by ... [state] constitution[s] and statutes" that are not inconsistent with federal law. 42 U.S.C. § 1988(a).

In a series of telephonic case management conferences before this Court, Plaintiff informed the Court that he had dyslexia,[5] and, because of this, he would not be able to prepare opposition papers without assistance. (*See* 11/13/09 Tr. at p. 5, l. 24–p. 8, l. 1.) Plaintiff explained that, although King had been assisting him, Plaintiff lost that assistance when he was transferred to Elmira. (*See id.* at p. 10, ll. 10–21.) Plaintiff also told the Court that, when King was later transferred to Elmira, as well, Plaintiff requested permission for King to help him again with his legal paperwork, but received no response. (*See* Transcript of Telephone Conference before the Court, conducted Feb. 2, 2010 ("2/2/10 Tr.") (Dkt.22) at p. 3 ll. 12–16.)[6]

[5]  According to one source, "dyslexia" is an "impairment of the normal ability to read, due to a defect in the brain." J.E. Schmidt, M.D., 2–D *Attorneys' Dictionary of Medicine* 37045 (2009).

[6]    Apparently, permission was never granted, and when Plaintiff's legal documents were discovered in King's cell, King was "keep-locked" for helping Plaintiff file his legal paperwork without official authorization. (*See id.* at p. 2, l. 25–p. 4, l. 3.) When a prisoner is placed on "keep-lock," it means the prisoner cannot leave his cell. (*See id.* at p. 3, ll. 6–8.)

On February 16, 2010, following a conference with the parties, the Court issued an Order stating that, in addressing Defendants' motion, it would first focus on Defendants' statute of limitations arguments. (*See* Order dated Feb. 16, 2010 (Dkt.21), at 2.) The Court directed Plaintiff to respond, in the first instance, only to those arguments. (*See id.*) The Court instructed Plaintiff that, if he were able to obtain assistance in preparing opposition papers, then he should serve and file his opposition, on the statute of limitations issue, by March 19, 2010. (*Id.*) If, on the other hand, he were unable to obtain such assistance, then, the Court stated, it would instead hear oral argument from all parties on that date. (*See id.*) [7]

[7]    In the February 2, 2010 conference that preceded the Court's issuance of its February 16 Order, the Court further explained to Plaintiff that, if the Court afforded him an opportunity for oral argument in lieu of briefing, then the transcript of his argument would become part of the record on the motion. (*See* 2/2/10 Tr. at p. 10, ll. 1–12; *see also* 3/19/10 Tr., at p. 2, ll. 14–19.)

### C. *Plaintiff's Oral Argument*

**\*3** In lieu of submitting written opposition papers, Plaintiff proceeded to present oral argument at a telephone conference before the Court on March 19, 2010. (*See* 3/19/10 Tr.) Plaintiff stated that he was born with dyslexia, which prevented him from "learning and reading and writing and working as an average person on the same playing field." (*Id.* at p. 3, l. 25–p. 4, l. 3.) Plaintiff argued that, because of his dyslexia, he was unable to read and write and did not know that his constitutional rights had been violated, until King brought this to his attention more that three years after his arrest. (*See generally id.*) Plaintiff maintained that he could only read and write with great difficulty, and, but for his dyslexia, he would have addressed his claims in 2005. (*Id.* at p. 4, ll. 9–23.)

When asked if he had ever tried to file any type of grievance with the prison in 2005, Plaintiff said that he did not know he could, reiterating that he had "just learned

[his] constitutional rights when [he] was in the cell with King for a whole year." (*Id.* at p. 5, ll. 6–19.) Plaintiff said that he could read at roughly a second-grade reading level and had to ask people to read him letters from counsel or the Court. (*Id.* at p. 6, l. 25–p. 7, l. 20.) [8] Plaintiff further explained that he could recognize and identify small words like "the," "it," and "is," but said that, "when it gets intense [,][he] can't do it." (*Id.* at p. 7, ll. 21–23.) When asked if anyone in the law library or prison could have helped him prepare a complaint, Plaintiff answered that he had been relying on his appellate attorney and, while his criminal appeal was still pending, he did not know to go to the law library for help with his case. (*See id* . at p. 11, ll. 9–23.) Plaintiff elaborated that he had "just learned about constitutional violations," after King had explained to him that "in civil law you are the prosecutor," whereas "in criminal law you are a defendant," and this was why Plaintiff was "now on complaint." (*Id.* at ll. 13–17.)

[8]    In a prior telephone conference, Plaintiff stated that, while he is not illiterate, he reads very slowly and has to read something "four or five times to fully understand." (11/13/09 Tr. at p. 7, ll. 5–11; p. 11, ll. 2–11.) With respect to his ability to write, he previously stated that it takes him a very long time to write, and that his letters are often formed backwards. (*See id.*)

Plaintiff further reported that he had been unable to obtain any help finding and reading case law on the subject of equitable tolling of a statute of limitations on the ground of disability, and that the only information he had regarding the statute of limitations was from King. [9] (*See id.* at p. 11, l. 24–p. 12, l. 4.) Plaintiff argued, though, that "the statute of limitations start[s] from the time that you are made aware of the constitutional violation," and that the relevant issue is "when you became aware that you had suffered some kind of wrong for which you might be able to seek to recover damages." (*Id.* at p. 12, ll. 5–9.) Plaintiff maintained that, while, at the time of his arrest, he was aware of what had happened to him, he did not know that there had been any constitutional violation for which he could sue, until King read all of his case materials in January of 2009. (*See id.* at p. 12, l. 10–p. 13, l. 7.)

[9]    In a prior conference, Plaintiff mentioned that he had experienced difficulty reviewing Defendants' motion to dismiss because "the prison system provides very little assistance to dyslexic prisoners." (11/13/09 Tr. at p. 6, ll. 2–3.) Plaintiff explained that, while the Department of Corrections "make[s] provisions for

illiterate people ... [t]hey don't consider dyslexic and illiterate the same thing." (*Id.* at p. 6, ll. 17–24.)

**\*4** When the Court asked if there was any existing documentation of Plaintiff's reading level, Defendant's counsel pointed out that the only documentation Plaintiff had produced was his Individualized Education Program form from 1995, classifying Plaintiff as "learning disabled," but not specifically mentioning dyslexia. (*See id.* at p. 14, ll. 5–12; *see also* Individualized Education Program Form # 25–6300.00.3 ("IEP Form"), dated Apr. 8, 1995, attached as Ex. A to Compl.) Plaintiff explained that dyslexia was not on his IEP Form because it was a confidential medical diagnosis. [10] (*See* 3/19/10 Tr. at p. 15, ll. 4–7.)

> [10]  Plaintiff further stated that he had been having a hard time obtaining his medical documents, which he stated that he also needed for "[an]other situation [with the] Department of Corrections" (*id.* at p. 14, l. 18–p. 15, l. 3), and that he had signed a medical release, in the hope that Defendants' counsel would be able to obtain his medical history and any medical diagnosis he had "pertaining to [the][B]oard of [E]ducation" (*id.* at p. 15, ll. 6–11).

Plaintiff said he had told an education supervisor at Elmira that, because he was dyslexic and could not pass tests, he had cheated on tests in the past in order to avoid going to school at the facility. (*See id.* at p. 15, l. 21–p. 16, l. 4 (noting that "in the Department of Correction[s] they make you go to school in some facilities").) According to Plaintiff, the education supervisor then gave him a waiver from school because "he understands that the Department of Corrections is not making any accommodations." (*Id.* at p. 16, ll. 5–7.) Plaintiff stated that some of his reading scores were "inaccurate because [he] cheated" and that, consequently, the Department of Corrections "was unable to get a full description of where [he] was supposed to be placed." (*Id.* at p. 17, ll. 10–13.) He stated that, at Elmira, he had initially been placed in a special education program "in the lower school level," but he "just signed out" of that program. (*Id.* at p. 17, ll. 13–16.)

This Court liberally construed Plaintiff's oral argument as an argument that any applicable statutes of limitations should be found to have been tolled because of his claimed disability of dyslexia (*see id.* at p. 7, l. 25–p. 8, l. 6), and directed Defendants' counsel to file reply papers addressing the equitable tolling issue (*see id.* at p. 21, ll. 15–20). Defendants submitted a reply brief on April 9, 2010,

addressing Plaintiff's arguments. (*See* Defendants' Reply Memorandum of Law if Further Support of Their Motion to Dismiss dated Apr. 9, 2010 (Dkt.26).)

## DISCUSSION

### I. *APPLICABLE LEGAL STANDARD*

#### A. *Rule 12(b)(6)*

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure when it is not "legally sufficient" to state a claim upon which relief may be granted. *Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991). In deciding a 12(b) (6) motion, the Court "accept[s] as true all factual statements alleged in the complaint and draw[s] all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007); *accord Jaghory v. N. Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997).

Where, as here, a plaintiff is proceeding *pro se,* the Court must construe the pleadings liberally, *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006), and "interpret them to raise the strongest arguments that they suggest" *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *see also Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (a *pro se* plaintiff's pleadings, "however inartfully pleaded" are held "to less stringent standards than formal pleadings drafted by lawyers" (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972))). Further, while the Court generally "may not look outside the pleadings when reviewing a 12(b)(6) motion to dismiss," *Gadson v. Goord,* No. 96 Civ. 7544(SS), 1997 U.S. Dist. LEXIS 18131, at *2 n. 2 (S.D.N.Y. Nov. 13, 1997), the requirement that a *pro se* plaintiff's allegations be construed liberally makes it appropriate for the Court to consider factual allegations made in the plaintiff's opposition memorandum, as long as they are consistent with the complaint, *see Braxton v. Nichols,* No. 08 Civ. 08568(PGG), 2010 U.S. Dist. LEXIS 25652, at *3 (S.D.N.Y. Mar. 18, 2010) (citing *Coakley v. 42nd PCT. Case 458,* No. 08 Civ. 6202(JSR)(RLE), 2009 U.S. Dist. LEXIS 89437, at *7 (S.D.N.Y. Aug. 21, 2009) (Report & Recommendation), *adopted by,* 2009 U.S. Dist. LEXIS 89372 (S.D.N.Y. Sept. 29, 2009)); *see also Gill v. Mooney,* 824 F.2d 192, 194–95 (2d Cir.1987). By the same logic, the Court may consider factual allegations asserted

orally by a *pro se* plaintiff, in opposition to a dismissal motion.

**\*5** Though the Court will construe a *pro se* plaintiff's pleadings liberally, the plaintiff is still required to comply with all "relevant rules of procedural substantive law." *Bisson v. Martin Luther King Jr. Health Clinic,* No. 07 Civ. 5416, 2008 U.S.App. LEXIS 23977, at \*2 (2d Cir. Nov. 20, 2008) (citing *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983)). Any "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d Cir.2006) (citing *Smith v. Local 819 I.B. T. Plan,* 291 F.3d 236, 240 (2d Cir.2002)). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ___ U.S. ___, ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).

## II. DEFENDANTS' MOTION TO DISMISS

### A. *Plaintiff's Federal Claims*
As noted above, Plaintiff, in his Complaint, purports to assert claims under a number of federal statutes (42 U.S.C. § 1981, 1983, 1985, and 1986), although Defendants treat the Complaint as arising under Section 1983. For statute of limitations purposes, this distinction is of no consequence, as none of the other sections of Title 42 cited by Plaintiff have been interpreted to provide for a longer limitations period than Section 1983. (*See infra* at n. 11.) Accordingly, this Court will similarly focus its analysis on Plaintiff's Section 1983 claim.

### 1. *Assertion of Claims Outside the Applicable Limitations Periods*
Section 1983 provides a vehicle for a plaintiff to assert a federal constitutional claim against a state actor. The statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation,

custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. An action against a public servant in his official capacity is treated as a suit against the relevant governmental agency itself, *Reynolds v. Giuliani,* 506 F.3d 183, 191 (2d Cir.2007), and a municipality—or an agency thereof—is a "person" for purposes of Section 1983 and, therefore, may be sued thereunder, *see Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Reynolds,* 506 F.3d at 190.

**\*6** In considering Section 1983 claims, courts should apply " 'the general or residual [state] statute [of limitations] for personal injury actions.' " *Ormiston v. Nelson,* 117 F.3d 69, 71 (2d Cir.1997) (quoting *Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989) (alteration in original)); *see also Wallace v. Kato,* 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). Accordingly, "New York's three-year statute of limitations for unspecified personal injury, New York Civil Practice Law and Rules § 214(5), governs Section 1983 actions in New York." *Ormiston,* 117 F.3d at 71. [11]

[11] The three-year statute of limitations governing Section 1983 claims applies to claims arising under Sections 1981 and 1985, as well. *See Cortes v. City of New York,* No. 08 Civ. 4805(LTS) (RLE), 2010 U.S. Dist. LEXIS 31054 at \*26 (S.D.N.Y. Mar. 30, 2010) (citing *King v. Am. Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002); *Cornwell v. Robinson,* 23 F.3d 694, 703 (2d Cir.1994)). Section 1986, on the other hand, expressly provides for a shorter (one-year) limitations period. *See* 42 U.S.C. § 1986; *see also Poux v. County of Suffolk,* No. 09 Civ. 3081(SJF)(WDW), 2010 U.S. Dist. LEXIS 44399, at \*37 (E.D.N.Y. May 4, 2010); *Davis v. Travis,* No. 07 Civ. 3047(WHP), 2008 U.S. Dist. LEXIS 99801 at \*9 (S.D.N.Y. Dec. 3, 2008).

Federal law, however, governs the date when a Section 1983 claim "accrues," meaning the date when the statute

of limitations begins to run. *Singleton v. City of New York,* 632 F.2d 185, 191 (2d Cir.1980); *Pearl v. City of Long Beach,* 296 F.3d 76, 80 (2d Cir.2002). Under federal law, this limitations period begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Singleton,* 632 F.2d at 191 (citation and quotation marks omitted); *see also Wallace,* 549 U.S. at 388 (stating accrual occurs when plaintiff has a complete and present cause of action (citations and quotation marks omitted)). In cases alleging claims of false arrest or imprisonment, the statute of limitations starts to accrue once "legal process is initiated and the allegedly false imprisonment or arrest comes to an end." *Garcia v. City of New York,* No. 06 Civ. 746(LTS)(DCF), 2009 U.S. Dist. LEXIS 85370, at *9 (S.D.N.Y. Sept. 17, 2009) (citing *Wallace,* 549 U.S. at 389–90).

Here, Plaintiff's federal claims all accrued in June 2005, when he was allegedly racially profiled, falsely arrested, imprisoned, and denied medical care. More specifically, he was arrested on June 8, 2005, and arraigned two days later, on June 10, 2005. [12] (*See* Rap Sheet at 18.) None of Plaintiff's claims relate to injury arising out of any other events, and thus, for any of his federal claims to be considered timely, they must have been asserted no later than June 2008. As noted above, however, Plaintiff did not file his Complaint in this action until May 2009.

[12]    The statute of limitations on Petitioner's false imprisonment claim began to run when he was arraigned on charges. *See Wallace,* 549 U.S. at 389–90.

To the extent Plaintiff's statement that "the statute of limitations start[s] from the time that you are made aware of the constitutional violation" (3/19/10 Tr. at p. 12, ll. 5–6; 12, l. 10–p. 13, l. 14) can be construed as an argument that his claims did not accrue until January 2009, when King allegedly informed him of his rights, Plaintiff misunderstands the law. It is well established that accrual of the statute of limitations does not depend on a plaintiff's knowledge of the law, but rather on a plaintiff's knowledge of the injury. *See Singleton,* 632 F.2d at 191; *Pearl,* 296 F.3d at 80. While Plaintiff may not have been aware there had been a "constitutional violation" until King advised him, Plaintiff was certainly aware of his injuries in June 2005, when they occurred. At that time, Plaintiff knew that he had been held by the police, subjected to identification procedures that he considered flawed, and denied medical attention. (*See* Compl. at ¶¶

43–79.) The fact that Plaintiff may have been unaware that he had legal claims arising out of those events is of no consequence. *See Venticinque v. Brown,* No. 09 Civ. 2861(DLI) (MDG), 2010 U.S. Dist. LEXIS 36631, at *4 (E.D.N.Y. Apr. 14, 2010) ("The date on which a plaintiff knew or had reason to know the injury was *actionable* is irrelevant." (citations omitted) (emphasis in original)). Consequently, Plaintiff's claims are untimely.

### 2. *Potential Grounds for Tolling of the Limitations Period*

**\*7** In order to avoid dismissal of his untimely claims, Plaintiff would have to demonstrate that he is entitled to tolling of the applicable statute of limitations. The Court considers two possibilities here: statutory tolling and equitable tolling.

#### a. *Statutory Tolling under C.P.L.R. § 208*

Unless inconsistent with the federal policy underlying Section 1983, state tolling rules, like state limitations periods, are controlling. *Singleton,* 632 F.2d at 191 (citing *Bd. of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980)); *see also Pearl,* 296 F.2d at 280; *Carter v. Doe,* No. 05 Civ. 8432(NRB), 2006 U.S. Dist. LEXIS 51856, at *7 (S.D.N.Y. July 25, 2006). Under New York law, the plaintiff, not the defendant, bears the burden of proof on the question of whether a limitations period should be tolled. *Vallen v. Carrol,* No. 02 Civ. 5666(PKC), 2005 U.S. Dist. LEXIS 20840, at *9 (S.D.N.Y. Sept. 20, 2005) (citing *Doe v. Holy See ( State of Vatican City ),* 17 A.D.3d 793, 793 N.Y.S.2d 565, 567–68 (3d Dep't 2005); *Assad v. City of New York,* 238 A.D.2d 456, 656 N.Y.S.2d 669, 669–70 (2d Dep't 1997)).

Section 208 of the New York Civil Practice Law and Rules provides for statutory tolling by reason of "infancy or insanity." N.Y.C.P .L.R. § 208. The New York Court of Appeals, however, has interpreted the statute's "insanity" provision narrowly. After reviewing the legislative history of this provision, the court concluded that "the Legislature meant to extend the toll for insanity to only those individuals who are unable to protect their legal rights because of an over-all inability to function in society." *McCarthy v. Volkswagen of Am.,* 55 N.Y.2d 543, 548, 450 N.Y.S.2d 457, 435 N.E.2d 1072 (1982). A plaintiff seeking to obtain the benefit of this statute must not only show that he suffered from such an "inability to function in society," but also that his disability was continuous

during the relevant period. *See De Los Santos v. Fingerson,* No. 97 Civ. 3972(MBM), 1998 U.S. Dist. LEXIS 16657, at *10 (S.D.N.Y. Oct. 21, 1998). Under *McCarthy,* the state courts have consistently found that a very high level of incapacity must be demonstrated before a plaintiff may successfully invoke Section 208. While a plaintiff's extreme loss of cognitive function has been found to satisfy the statute's requirements, *see Yannon v. RCA Corp.,* 131 A.D.2d 843, 517 N.Y.S.2d 205, 207–08 (2d Dep't 1987) (requirements of Section 208 were satisfied where plaintiff suffered from dementia that rendered him unable to tie his shoes or add two numbers); even dementia may be insufficient to justify tolling under this provision, *see Burgos v. City of New York,* 294 A.D.2d 173, 742 N.Y.S.2d 38, 40 (1st Dep't 2002) (finding basis for tolling insufficient where plaintiff alleged that he suffered from "dementia and psychotic disorder" "due to multiple medical conditions that ... existed for many years and [were] permanent").

In some cases, it may be necessary for the Court to conduct an evidentiary hearing to determine if a plaintiff's mental state during the statutory period meets the high standard for insanity under Section 208, but such a hearing is not required in all cases, particularly where the plaintiff's mental condition does not present a "complex factual issue." *Carter,* 2006 U.S. Dist. LEXIS 51856, at *11 (finding that "no hearing is necessary because plaintiff's litigation history and medical records clearly preclude a finding that [plaintiff's] mental illness was sufficiently severe ... to warrant tolling the statute of limitations under Section 208"); *see also De Los Santos,* 1998 U.S. Dist. LEXIS 16657, at *14–15 (S.D.N.Y. Oct. 21, 1998) (noting that the suggestion by a "few lower courts" that "the question of a plaintiff's insanity should not be decided as a matter of law from the pleadings and affidavits alone" is "impossible to square with rulings by the New York Court of Appeals and the Second Circuit"); *Smith v. Smith,* 830 F.2d 11, 12 (2d Cir.1987) (deciding, without a hearing, that plaintiff was not entitled to tolling provisions of Section 208); *Eisenbach v. Metro. Transit Auth.,* 62 N.Y.2d 973, 479 N.Y.S.2d 338, 468 N.E.2d 293 (1984) (same).

**\*8** In this case, no evidentiary hearing is necessary for the Court to determine whether Plaintiff is entitled to tolling under Section 208, as, even assuming that all of Plaintiff's factual allegations regarding the nature of his disability are true, they would not be sufficient to demonstrate the type of "severe and incapacitating disability" that

could render him eligible for statutory tolling. *Swartz v. Berkshire Life Ins. Co.,* No. 99 Civ. 9462(JGK), 2000 U.S. Dist. LEXIS 14039, at *14 (S.D.N.Y. Sept. 22, 2000) (citing *Dumas v. Agency for Child Dev. N.Y. City Head Start,* 569 F.Supp. 831, 833 (S.D.N.Y.1983)). Plaintiff contends that he has had dyslexia since birth, and makes no claim that the symptoms of or difficulties caused by his dyslexia were in any way worse or different during the statutory period than at other times in his life. (*See* 3/19/10 Tr. at p. 3 l. 25–p.4 l. 3 (stating his dyslexia has been an "ongoing thing").) He also makes no assertion that he has ever been unable to manage his own day-to-day affairs. Plaintiff reported to the Court that, prior to his incarceration, he had not only attended school, but had both participated in and enjoyed school (*see id.* at p. 7, ll. 11–12); he also indicated that he was able to communicate with the education supervisor at Elmira regarding his need for an accommodation in any educational program because of his dyslexia (*see id.* at p. 15 l. 21–16 l.7). Furthermore, the record suggests that Plaintiff has been able to manage his "Type A" diabetes by carrying around a "diabetic kit," and that, while in police custody, he knew that he needed both food and his diabetic kit to prevent his blood sugar from dropping. (*See* Compl. at ¶¶ 68, 72, 75, 77–78.) In his numerous conferences with this Court, Plaintiff has also demonstrated that he is capable of communicating, reasoning, expressing his point of view, asking questions, listening, and following instructions. None of this is consistent with an "over-all inability to function in society." *McCarthy,* 55 N.Y.2d at 548, 450 N.Y.S.2d 457, 435 N.E.2d 1072.

In addition, although Plaintiff contends that, as a result of his dyslexia, he "can't defend [himself]" (*See* 3/19/10 Tr. at p. 24, 450 N.Y.S.2d 457, 435 N.E.2d 1072, ll. 19–20; *see also* Transcript of Telephone Conference before this Court, conducted Jan. 15, 2010 ("1/15/10 Tr.") (Dkt.24) at p. 6, 450 N.Y.S.2d 457, 435 N.E.2d 1072, l. 22 (stating that he is "unable to defend on [his] own")), the Court notes that Plaintiff has demonstrated himself to be entirely capable of seeking assistance from others to assert his rights. Plaintiff has had no difficulty remembering what happened to him and explaining his injuries, and he did exactly that when he eventually enlisted King's help. (*See* 11/13/09 Tr. at p. 7, 450 N.Y.S.2d 457, 435 N.E.2d 1072 l. 25–p. 8 l. 8) After speaking with King, Plaintiff managed to file a grievance with the Department of Corrections and send a letter to the *Pro Se* office requesting assistance. (*See* King Aff. at ¶ 9.) When King became unavailable

to assist him, Plaintiff found other prisoners to read to him the documents sent by the Court (3/19/10 Tr. at p. 7, 450 N.Y.S.2d 457, 435 N.E.2d 1072, ll. 18–20), and he convinced a porter to write a letter to the Court for him (2/2/10 Tr. at p. 6, 450 N.Y.S.2d 457, 435 N.E.2d 1072, ll. 3–13). When unable to find anyone to help him write an opposition memorandum on the instant motion, Plaintiff was able to prepare and present a coherent oral argument to this Court. (*See* 3/19/10 Tr. at p. 18, 450 N.Y.S.2d 457, 435 N.E.2d 1072, ll. 12–17.) In fact, throughout these proceedings, Plaintiff has demonstrated that he can understand legal principles, state case names from memory, and, in general, advocate on his own behalf. (*See* 11/13/09 Tr. at p. 8, 450 N.Y.S.2d 457, 435 N.E.2d 1072 l. 19–p.9 l. 16; 2/2/10 Tr. at p. 8, 450 N.Y.S.2d 457, 435 N.E.2d 1072, ll. 2–15; p. 10, ll. 13–19; *see generally* 3/19/10 Tr.) Thus, any argument that Plaintiff has been incapable of taking action to defend his rights is conclusory and unpersuasive. [13] Indeed, Plaintiff does not really argue that he has been incapable of taking such action during the statutory period, but rather that he was merely unaware that he should, until advised by King. (*See* 3/19/10 Tr. at p. 5, 450 N.Y.S.2d 457, 435 N.E.2d 1072, ll. 2–19; 12, ll. 10–15.)

[13]    Even on a motion to dismiss, the Court need not accept such conclusory allegations as true. *See Luciano v. City of New York,* 684 F.Supp.2d 417, 421 (S.D.N.Y.2010) (noting that "[w]ithout more, the Court does not accept [plaintiff's] conclusory allegation that he was unable to function") (citing *Dumas,* 569 F.Supp. at 834 n. 4 (noting that the court "need not assume the correctness of conclusory assertions such as [plaintiff's] statement that 'this affliction left me generally unable to function in society, and I was unable to protect my legal rights in connection with my discharge'"); *De Los Santos,* 1998 U.S. Dist. LEXIS 16657, at *12 (S.D.N.Y. Oct. 21, 1998) ("[n]or does plaintiffs' conclusory statement that de los Santos was 'unable to protect his rights because of an overall inability to function' change matters, as it is well established that courts need not assume the correctness of such conclusory allegations")).

**\*9** Under these circumstances, Plaintiff cannot demonstrate that he is entitled to statutory tolling of the statute of limitations, pursuant to Section 208.

**b. *Equitable Tolling***

Alternatively, the Court has considered whether Plaintiff might be entitled to "equitable" tolling of the statute of limitations. Under New York law, a plaintiff may be entitled to equitable tolling of a statute of limitations where a defendant "wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *Kellogg v. Office of the Chief Med. Exam'r of the City of New York,* 6 Misc.3d 666, 791 N.Y.S.2d 278, 283 n. 2 (N.Y. Sup.Ct. Bronx Co.2004); *Kotlyarsky v. N.Y. Post,* 195 Misc.2d 150, 757 N.Y.S.2d 707, 707 (N.Y. Sup.Ct. Kings Co.2003). [14] This state-law doctrine is inapplicable here, as Plaintiff makes no allegation that he was unaware of his claims because of "egregious wrongdoing" by Defendants, such as fraud, misrepresentation or deception.

[14]    As these cases note, the state doctrine of "equitable tolling" is related to the doctrine of "equitable estoppel." It has been held that the former doctrine may be invoked where the defendant has deceived or misled the plaintiff so as to conceal the cause of action itself, whereas the latter involves circumstances where the plaintiff is fully aware of his cause of action, but misconduct by the defendant leads to the plaintiff's delay in filing suit. *See Kellogg,* 791 N.Y.S.2d at 283 n. 2; *Kotlyarsky,* 757 N.Y.S.2d at 707. Despite the distinction drawn by these cases, it is clear that both doctrines involve some form of serious misconduct by the defendant, which, in fairness, should then estop the defendant from relying on the statute of limitations as a defense. *See Abbas v. Dixon,* 480 F.3d 636, 642 (2d Cir.2007) (noting that, "[u]nder New York law, the doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense." (citing, *inter alia, Kotlyarsky,* 757 N.Y.S.2d at 706)).

Nor would Plaintiff be entitled to equitable tolling under similar principles of federal common law. *Doe v. Menefee,* 391 F.3d 147, 159 (2d Cir.2004) (noting that, under federal law, equitable tolling is limited to "rare and exceptional circumstances" (citing *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000) (per curiam))). As the Supreme Court has recently held, in the context of a petition for a writ of habeas corpus: "To qualify for equitable tolling, a ... petitioner must show that " '(1) he has been pursuing his rights diligently and (2) [that] some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida,* 560 U.S. ——, 2010 U.S. Dist. LEXIS 4946, at *30 (June 14, 2010) (quoting *Pace v. DiGuilelmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161

L.Ed.2d 669 (2005)); *see also Walker v. Jastremski,* 430 F.3d 560, 564 (2d Cir.2005) (finding equitable tolling only appropriate where " 'extraordinary circumstances' prevented a party from timely performing a required act, and that the party 'acted with reasonable diligence throughout the period he [sought] to toll" (citing *Menefee,* 391 F.3d at 159 (alteration in original))); *accord Smith,* 208 F.3d at 17. Lack of legal knowledge is not a sufficient basis to invoke this equitable tolling doctrine. *See, e.g., Huang v. United States,* No. 03 Civ. 3755(RPP), 2003 U.S. Dist. LEXIS 17409, at *6 (S.D.N.Y. Oct. 2, 2003) (noting that the courts in this district have "unanimously found" that a "lack of familiarity with the legal system" does not merit equitable tolling).

Further, this Court has expressly held that a learning disability, even in conjunction with other mental disabilities, does not constitute the extraordinary circumstances necessary to invoke equitable tolling, *see Cannon v. Kuhlmann,* No. 99 Civ. 10101(DLC), 2000 U.S. Dist. LEXIS 12932, at *4–6 (S.D.N.Y. Sept. 7, 2000) (deeming petitioner's statements that he suffered from a learning disability, low intelligence, memory loss, and took psychiatric medication "insufficient to justify tolling"), and other courts have reached the same conclusion, *see, e.g., Heath v. Ault,* 334 Fed. Appx. 34, 34 (8th Cir.2009) (finding petitioner who had a learning disability in reading "did not establish the extraordinary circumstances necessary to equitable toll the limitations period."); *Laurson v. Leyba,* 507 F.3d 1230, 1232 (10th Cir.2007) (finding dyslexia is not a circumstance that justifies the equitable tolling of the statute of limitations).

**\*10** Additionally, courts in this circuit have repeatedly held that illiteracy, lack of English fluency, lack of prison law library resources or legal assistance, ignorance of the law, and a plaintiff's *pro se* status are not sufficient bases for equitable tolling. *See, e.g,. Marte v. Brown,* No. 09 Civ. 1036(RJS) (KNF), 2010 U.S. Dist. LEXIS 39294, at *9 (S.D.N.Y. Apr. 20, 2010) ("Courts have rejected lack of access to legal services, illiteracy, lack of English fluency, and ignorance of the law as extraordinary circumstances that 'effectively prohibit [a] petitioner from pursing habeas relief.' " (quoting *Armand v. Strack,* No. 98 Civ. 6650(RDJ), 1999 U.S. Dist LEXIS 3807, at *12 (E.D.N.Y. Feb. 19, 1999) (alteration in original))); *Ayala v. Fischer,* No. 04 Civ. 3404(LAK), 2004 U.S. Dist. LEXIS 21955, at *3 (S.D.N.Y. Nov. 2, 2004) ("Ignorance of the law and an inability to read or write do not

constitute extraordinary circumstances that would justify equitable tolling."); *see also Gillyard v. Herbert,* No. 01 Civ. 3427(DC)(GWG), 2003 U.S. Dist. LEXIS 1228, at *10 (S.D.N.Y. Jan. 30, 2003) (noting prisoner's *pro se* status by itself did not merit equitable tolling).

Plaintiff "has not established that he acted at all, let alone with reasonable diligence, to file this action during the limitations period," *Coleman v. City of New York,* No. 08 Civ. 5276(JG)(LB), 2009 U.S. Dist LEXIS 97692, at *10 (E.D.N.Y. Oct. 20, 2009), nor has he alleged that any conduct by Defendants or any "extraordinary" circumstances led to his delayed filing of his federal claims. For these reasons, equitable tolling is not warranted in this case.

Accordingly, Plaintiff's Section 1983 claims against Defendants are barred by the statute of limitations, as are any other federal claims that he may be seeking to assert, and I therefore recommend that the Court grant Defendants' motion to dismiss those claims, on that ground.

**B.** *Plaintiff's State–Law Claims*

To the extent Plaintiff's Complaint asserts any pendent state-law claims against Defendants, those claims are also time-barred. As Defendants correctly point out (Def. Mem. at 7), Plaintiff's state claims are subject to New York General Municipal Law § 50–i, which provides that any action or special proceeding against the City or its employees "shall be commenced within one year and ninety days after the happening of the event upon which the claim is based." N .Y. Gen. Mun. Law § 50–i(1)(c); *see Howard v. City of New York,* No. 02 Civ. 1731(KMK), 2006 U.S. Dist LEXIS 63426, at *8 (S.D.N.Y. Aug. 30,2006).[15] The New York Court of Appeals has "consistently treated the year–and–90– day provision contained in Section 50–i as a statute of limitations." *Campbell v. City of New York,* 4 N.Y.3d 200, 203, 791 N.Y.S.2d 880, 825 N.E.2d 121 (2005); *see also Howard,* 2006 U.S. Dist. LEXIS 63426 at *10.

[15]    Defendants further argue that, should the Court construe Plaintiff's Complaint to assert state law claims, those claims should also be dismissed because of Plaintiff's purported failure to file a notice of claim. (*See* Def. Mem., at 7.) The Court need not reach this issue.

As discussed above, the "event[s] upon which the claim is based" occurred in early June, 2005, and Plaintiff therefore should have asserted his state claims by early September, 2006. Although the year–and–90–day statute of limitations is subject to the tolling provisions of Section 208, *see Kuhland v. City of New York,* 867 N.Y.S.2d 17 (N.Y. Sup.Ct. Queens County, 2008) (table), for reasons set forth above, Plaintiff's dyslexia does not qualify him for the benefit of either statutory or equitable tolling. I therefore recommend that the Court also grant Defendants' motion to dismiss Plaintiff's state-law claims. [16]

[16] Ordinarily, if a plaintiff's federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over the plaintiff's state-law claims and should instead dismiss those claims without prejudice, pursuant to 28 U.S.C. § 1367(c)(3). *See Valencia v. Lee,* 316 F.3d 299, 305 (2d Cir.2003) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims" (citing *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)); *see also Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir.1998) ("In general, where the federal claims are dismissed before trial the state claims should be dismissed as well."). Here, however, where Plaintiff's state-law claims are plainly time-barred, it would be in the interest of judicial economy to dismiss them on that ground.

### C. *Claims Against Remaining Defendants*

**\*11** According to Defendants, additionally-named defendants Seewald, Massa, and John Doe[s] # 2 through 14, as members of the New York City Police Department, have not yet been served with process in this matter, and thus have not appeared in the action. (*See* Def. Mem. at 1 n. 2.) Any claims against these additional defendants, however, would be subject to dismissal under the same statutes of limitations discussed above. "A district court has the power to *sua sponte* dismiss claims against nonmoving defendants for failure to state a claim, as long as the plaintiff has been given an opportunity to

be heard." *Whitfield v. O'Connell,* No. 09 Civ.1925(WHP), 2010 U.S. Dist. LEXIS 25584, at *18 n. 4 (S.D.N.Y. Mar. 18, 2010) (citing *Thomas v. Scully,* 943 F.3d 259, 260 (2d Cir.1991)). Here, as set forth above, Plaintiff has had a fair opportunity to be heard on the statute of limitations issue, which equally affects his claims against all named defendants. For this reason, I further recommend that the Court dismiss Plaintiff's federal and state claims against these additional defendants.

### *CONCLUSION*

For all the foregoing reasons, I respectfully recommend that Defendant's motion to dismiss the Complaint (Dkt.14) be granted, that all of Plaintiff's claims asserted in this action be dismissed in their entirety as time-barred, and that this case be closed on the docket of the Court.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable P. Kevin Castel, United States Courthouse, 500 Pearl Street, Room 2260, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Castel. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2D Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 58 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

### All Citations

Not Reported in F.Supp.2d, 2010 WL 3466175

---

WESTLAW  © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 1010060
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
S.D. New York.

John WHITFIELD, Plaintiff,
v.
Dr. David O'CONNELL, et al., Defendants.

No. 09 Civ.1925(WHP).
|
March 18, 2010.

**Attorneys and Law Firms**

Mr. John Whitfield, Woodbourne, NY, pro se.

Christina Chinwe Okereke, Esq., New York State Office
of the Attorney General, New York, NY, for State
Defendants.

Joseph T. Pareres, Esq., Rachel Hilary Poritz, Esq.,
Silverson, Pareres & Lombardi, L.L.P., New York, NY,
for Bio-Reference Defendants.

*MEMORANDUM & ORDER*

WILLIAM H. PAULEY III, District Judge.

**\*1** Plaintiff *pro se* John Whitfield ("Whitfield")
brings this federal civil rights action against the
New York State Department of Correctional Services
("DOCS"), various named and unnamed DOCS officials
and medical professionals at six New York State
prisons in their individual and official capacities, Bio-
Reference Laboratories s/h/a Medilabs Laboratory ("Bio-
Reference"), Robert L. Rush, Ph.D. ("Dr.Rush"),
and unnamed Bio-Reference technologists. Defendants
Dr. N. Muthra ("Dr.Muthra"), Dr. Khee Tint Maw
("Dr.Maw"), Philip Williams ("Williams"), Brian Fischer
("Fischer"),[1] and DOCS (collectively the "State
Defendants") move to dismiss the Amended Complaint
pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal
Rules of Civil Procedure. Defendants Dr. Rush and Bio-
Reference (collectively the "Bio-Reference Defendants")
move to dismiss the Amended Complaint pursuant to

Rules 12(b)(1) and 12(b)(6) and, in the alternative, they
move for summary judgment. For the following reasons,
the State Defendants' and the Bio-Reference Defendants'
motions to dismiss the Amended Complaint are granted.

[1]     Numerous other individual State Defendants named
and unnamed in the Amended Complaint have
not been served. Those named Defendants are:
DOCS Inmate Grievance Program Director Thomas
G. Eagen, Drs. David O'Connell, J, Perilli, Lester
Wright, Jerome Fein, "Everett," Gerald Ginsberg,
Heidi L. Fine, M.A. Halko, Andrew Shapiro,
and F. Lancellotti; and Registered Nurses Philip
Erickson, Michael Michener, Colleen Bennett,
Margaret Coloni, Ruth Gilligan, James McMahon,
Robert Magee, Cathie Turta-Yohe, Carol Kunes,
Baib Koziarski, Leacy Miller, D. Rick, Mana
Jones, Joyce Gutowski, Suzette Cainper, Elizabeth
Hamawy, Roberta Jahn-Sissoko, and Valerie Jane
Monroe.

*BACKGROUND*

For purposes of these motions, this Court accepts the
following allegations of the Amended Complaint as true.[2]
Whitfield has been in DOCS custody since June 1988.
At that time, he entered Downstate Correctional Facility
("Downstate") and has been housed over the last twenty
years in at least six DOCS facilities around New York
State. (Amended Verified Complaint dated Sept. 27, 2009
("Compl.") ¶ 59.)

[2]     In his Complaint, Whitfield references grievances #
SS-39628-04, # WB-14349-08 and # WB14427-08,
and five laboratory reports dated June 2, 1988,
September 23, 1993, March 22, 1995, August 30,
2001, and July 29, 2006. These documents, which
Whitfield submitted with his opposition papers, are
incorporated by reference and properly considered on
a motion to dismiss. *See, e.g., Sanchez v. Velez,* No.
08 Civ. 1519(NRB), 2009 WL 2252319, at *1 & n. 1
(S.D.N.Y. July 24, 2009) (considering *pro se* plaintiff's
grievances referenced in the complaint on motion to
dismiss).

Whitfield has complained to DOCS medical staff about
lower back, kidney, chest and lung pain for years.
(Compl.¶¶ 58, 94, 101.) He asserts DOCS employees
omitted many of his complaints from his Ambulatory
Health Records. (Compl.¶ 97.) On November 6, 2000,

Whitfield received treatment for bacterial pneumonia from Williams, a physician's assistant at Sing Sing Correctional Facility ("Sing Sing"). (Compl.¶¶ 6, 74.) Whitfield alleges that although he experienced a severe allergic reaction to the prescribed antibiotic, Williams forced him to continue taking the medication and refused to prescribe another. (Compl.¶ 100.)

On October 5, 2004, Whitfield filed grievance # SS-39628-04 (the "Chest Pain Grievance") at Sing Sing with the Inmate Grievance Resolution Committee (the "IGRC") complaining that the Medical Department's treatment of his ongoing chest pain was inadequate and requesting to see an outside physician. (Compl. ¶ 54; Plaintiff's Affidavit in Support of Opposition to Defendants' Motion to Dismiss and Motion for Summary Judgment dated Aug. 4, 2009 ("Pl.Aff.") Ex. A: Inmate Grievance Complaint dated Oct. 5, 2004.) On November 3, 2004, Fischer, the Superintendent of Sing Sing, denied Whitfield's appeal from the IGRC's adverse decision. (Compl. ¶¶ 8, 78; Pl. Aff. Ex. A: Superintendent decision on appeal dated Nov. 3, 2004.) Whitfield then appealed to the Central Office Review Committee (the "CORC"), which denied his grievance on December 1, 2004. (Compl.¶ 54.)

**\*2** In June 2008, Whitfield was transferred from Sing Sing to Woodbourne Correctional Facility ("Woodbourne"). (Compl.¶¶ 1, 55.) On arrival, Whitfield received a series of medical examinations, including blood and urine tests. (Compl.¶ 55.) On July 28, 2008, Woodbourne medical staff informed Whitfield that he had a urinary tract infection and prescribed a seven-day antibiotic regimen. (Compl.¶ 55.) Whitfield alleges that while taking the prescribed antibiotic, his "long-standing chest and lung pain flared up substantially." (Compl.¶ 56.) When the pain persisted after completing the antibiotic treatment, he attended sick call and asked to see a doctor. (Compl.¶ 56.)

On August 13, 2008 Whitfield received copies of his DOCS medical records that he had requested. (Compl.¶ 56.) Whitfield claims they showed that "as far back as March 1995 there was clear documentary evidence of bacteria in his urine." (Compl.¶ 56.) Specifically, a laboratory report from Attica Correctional Facility ("Attica") dated March 22, 1995 indicated a "few" bacteria in his urine (Pl. Aff. Ex. B: Laboratory report dated Mar. 22, 1995 ("Attica Lab Report")), yet according to Whitfield he did not

receive antibiotics for that condition at Attica (Compl.¶ 56). Further, two laboratory reports from Sing Sing dated August 30, 2001 and July 29, 2006 recorded "moderate" bacteria in his urine and abnormal hematology results such as low white blood cell and platelet counts. (Compl. ¶ 57; Pl. Aff. Ex. B: Laboratory reports dated Aug. 30, 2001 and July 29, 2006 ("Sing Sing Lab Reports").) The Sing Sing Lab Reports were ordered by Drs. Muthra and Maw, physicians in Sing Sing's Medical Department. (Compl. ¶¶ 4-5, 73; Sing Sing Lab Reports.)

The Attica Lab Report and the Sing Sing Lab Reports were issued by Bio-Reference, an independent laboratory that performed the testing of samples sent by requesting DOCS physicians who treated Whitfield. (Compl.¶ 10.) Dr. Rush is, and was at all relevant times, the Director of Bio-Reference. (Compl.¶ 11.) Whitfield alleges that Bio-Reference did not identify the specific bacteria found in his urine or conduct antibiotic sensitivity tests after urinalyses showed the presence of bacteria on March 22, 1995, August 20, 2001, and July 29, 2006. (Compl.¶¶ 79-80.) He further claims that the Bio-Reference Defendants instituted a policy discouraging Bio-Reference employees from using costly techniques like bacteria identification and sensitivity tests on inmate samples. (Compl.¶ 81.)

On August 18, 2008, Whitfield met with Dr. F. Lancellotti ("Dr.Lancellotti"), a physician in the Woodbourne Medical Department, to inquire about his abnormal test results. (Compl.¶¶ 39, 58.) Dr. Lancellotti conducted additional blood and urine tests to confirm the antibiotic treatment removed all bacteria, as well as an x-ray and an EKG. (Compl.¶ 58.) Whitfield alleges that despite his requests, Dr. Lancellotti refused to conduct other tests to determine whether the bacterial infection damaged any organs. (Compl.¶ 58.) Whitfield was subsequently informed that the blood and urine tests were negative for the presence of bacteria. (Compl.¶ 58.)

**\*3** Whitfield then ordered a copy of his entire DOCS medical file. (Compl.¶ 59.) In reviewing that file on September 8, 2008, Whitfield learned that the first urinalysis conducted when he entered DOCS custody at Downstate in June 1988 indicated the presence of bacteria in his urine. (Compl. ¶ 59; Pl. Aff. Ex. B: Laboratory report dated June 2, 1988 ("Downstate Lab Report")) He also discovered a laboratory report from Attica dated September 23, 1993 reporting a "marked decrease" in platelet count. Whitfield claims that report "confirm [ed]

the presence of a spreading bacterial infection." (Compl. ¶ 73; Affidavit of John Whitfield dated Nov. 5, 2009 Ex. B: Laboratory report dated Sept. 23, 1993 ("Attica Lab Report").) Both lab reports were issued by Bio-Reference. On September 12, 2008, Whitfield again met with Dr. Lancellotti and requested to see a specialist. (Compl. ¶ 60.) Dr. Lancellotti denied Whitfield's request for an ultrasound or an MRI of his kidneys but ordered an x-ray. (Compl. ¶ 60.)

Whitfield alleges that Defendants "[a]t all times relevant ... acted pursuant to the policies ... promulgated by [DOCS] ." (Compl. ¶ 47.) Based on the laboratory reports in his medical file and Defendants' inactions, Whitfield claims that Defendants "entered into an agreement to ignore [his] urinary tract infection" of twenty years duration "to bring about his death." (Compl. ¶¶ 91-94.) Whitfield also claims that in furtherance of the conspiracy, employees at the Greenhaven Correctional Facility ("Greenhaven") removed laboratory reports from his file in October 1991 and January 1993, and that Dr. Heidi L. Fine destroyed an x-ray taken November 6, 2000. (Compl. ¶¶ 59, 95, 99.) He further alleges that Defendants' actions prevented him from discovering his true medical condition until July 28, 2008. (Compl. ¶ 106.)

On September 13, 2008, Whitfield filed grievance # WB-14349-08 (the "Infection Grievance") at Woodbourne requesting treatment "by an outside physician" and the removal of "the doctors who ignored [his] urinary tract infection." (Compl. ¶ 61; Pl. Aff. Ex. D: Inmate Grievance Complaint dated Sept. 13, 2008.) Dr. Lancellotti responded on September 25, 2008 by stating that "there was nothing currently wrong with [Whitfield's] health." (Compl. ¶ 123.) The CORC denied Whitfield's grievance on appeal on November 19, 2008. (Compl. ¶ 54; Pl. Aff. Ex. D: CORC Grievance Decision dated Nov. 19, 2008.)

On November 17, 2008, Dr. Lancellotti performed a laser surgical removal of a wart on Whitfield's tricep. (Compl. ¶ 63.) Whitfield alleges that Dr. Lancellotti treated him roughly during the procedure, left a deep gash and portions of the wart behind, and failed to prescribe pain killers. (Compl. ¶ 63.) Whitfield filed grievance # WB-14427-08 (the "Retaliation Grievance") on November 26, 2008 alleging Dr. Lancellotti acted in retaliation for the Infection Grievance. (Compl. ¶¶ 63,

125.) The CORC denied the Retaliation Grievance on January 28, 2009. (Compl. ¶ 54.)

## DISCUSSION

### I. *Legal Standard*

**\*4** "A court faced with a motion to dismiss pursuant to both Rule 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Magee v. Nassau Cty. Med. Ctr.,* 27 F.Supp.2d 154, 158 (E.D.N.Y.1998). When considering a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court accepts the material facts alleged in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Jaghory v. N.Y. State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997).

Nonetheless, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (requiring plaintiff to plead "enough fact [s] to raise a reasonable expectation that discovery will reveal evidence of [his claim]"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570). A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991).

A *pro se* litigant's submissions are held to "less stringent standards than [those] drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Courts must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions 'to raise the strongest arguments they suggest.' " *Bertin v. United States,* 478 F.3d 489, 491 (2d Cir.2007) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). "These liberal pleading rules apply with particular stringency to complaints of civil rights violations." *Phillip v. Univ. of Rochester,* 316 F.2d 291,

293-94 (2d Cir.2003). Nevertheless, the court need not accept as true "conclusions of law or unwarranted deductions of fact." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994) (citations omitted).

## II. *Eleventh Amendment and Sovereign Immunity*

"Neither a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983." *Spencer v. Doe,* 139 F.3d 107, 111 (2d Cir.1998); *see also Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). "Therefore, state officials cannot be sued in their official capacities for retrospective relief under section 1983." *Huminski v. Corsones,* 386 F.3d 116, 133 (2d Cir.2004) (citing *Will,* 491 U.S. at 71). Moreover, because Section 1983 does not abrogate a state's sovereign immunity, *Quern v. Jordan,* 440 U.S. 332, 341, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and the State of New York has not waived its immunity, claims against DOCS for both monetary and injunctive relief are barred under the Eleventh Amendment. *Santiago v. N.Y. State Dep't of Corr. Servs.,* 945 F.2d 25, 31-32 (2d Cir.1991). Accordingly, Whitfield's § 1983 claims against the individual State Defendants in their official capacities and against DOCS for monetary and injunctive relief are dismissed.

## III. *Statute of Limitations: Defendants Williams & Fischer*

### A. *In General*

**\*5** "In section 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions.' " *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) (quoting *Owens v. Okure,* 488 U.S. 235, 249-50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989)) (alterations in original). In New York, the applicable statute of limitations is three years. N.Y. C.P.L.R. § 214(5); *see also Pearl,* 296 F.3d at 79. "For statute of limitations purposes, a pro se prisoner's complaint is deemed filed on the date that the prisoner turn[s] his complaint over to prison officials for transmittal to the court, not when the court actually receives it." *Abbas v. Dixon,* 480 F.3d 636, 638 & n. 1 (2d Cir.2007) (internal quotation marks omitted). Because Whitfield delivered his original complaint to Woodbourne prison authorities on September 23, 2008,

his only actionable claims are those that accrued on or after September 23, 2005.

"Federal law determines when a section 1983 cause of action accrues ... [which occurs] ... when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl,* 296 F.3d at 80 (internal quotation and citations omitted). "The cause of action accrues even though the full extent of the injury is not known or predictable." *Wallace v. Kato,* 549 U.S. 384, 391, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). Likewise, "[d]elay in discovering the cause of the injury does not prevent the claim from accruing" because it is ' "discovery of the injury, not discovery of the other elements of the claim, [that] starts the clock.' " *Gonzalez v. Wright,* 665 F.Supp.2d 334, 348-49 (S.D.N.Y.2009) (quoting *Rotella v. Wood,* 528 U.S. 549, 555, 120 S.Ct. 1075, 145 L.Ed.2d 1047 (2000)). Moreover, "[t]he existence of a conspiracy does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs." *Pinaud v. Cty. of Suffolk,* 52 F.3d 1139, 1156 (2d Cir.1995).

Whitfield alleges that Williams deliberately refused to treat his underlying urinary tract infection or prescribe an alternative antibiotic when treating his bacterial pneumonia on November 6, 2000. Whitfield claims Fischer denied his Chest Pain Grievance on November 3, 2004. Even if Whitfield could not have discovered the cause of his alleged injuries or the existence of the alleged conspiracy until July 28, 2008, his claims against Williams and Fischer both accrued well before September 23, 2005.

### B. *Tolling: Continuing Violation and Fraudulent Concealment*

"To assert a continuing violation for statute of limitations purposes," the plaintiff must allege (1) "an ongoing policy of deliberate indifference to his or her serious medical needs"; and (2) for each defendant, "some acts in furtherance of the policy within the relevant statute of limitations period." *Shomo v. City of N.Y.,* 579 F.3d 176, 179, 182-84 (2d Cir.2009). To rely on the fraudulent concealment doctrine, a plaintiff must make non-conclusory allegations of "a conspiracy or other fraudulent wrong which precluded his possible discovery of the harms that he suffered." *Pinaud,* 52 F.3d at 1157; *see also Shomo,* 579 F.3d at 85 (plaintiff must allege "it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action" (emphasis in original)).

**\*6** Whitfield does not claim that Williams or Fischer participated in his treatment during the three years preceding the filing of this lawsuit. As for fraudulent concealment, the allegations in the Amended Complaint acknowledge the possibility that Whitfield could have discovered his chronic urinary tract infection before July 28, 2008. First, Whitfield complained about his health problems as far back as 2004. (Compl ¶ 54.) Moreover, when he requested access to his medical records, he received them promptly. (*See* Compl ¶¶ 56, 59.) Whitfield does not claim that any Defendant refused him access to his medical file at any time. Accordingly, the claims against Williams and Fischer are time-barred and dismissed.

### IV. *Failure to State a Claim* [3]

[3]    Although Defendants also move to dismiss on the ground that Whitfield failed to exhaust his administrative remedies, "the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies" where "a claim ... [*inter alia* ] ... fails to state a claim upon which relief can be granted." 42 U.S.C. § 1997e(c)(2); *see also McCoy v. Goord,* 255 F.Supp.2d 233, 252 (S.D.N.Y.2003).

#### A. *Deliberate Indifference to Serious Medical Needs*

To state a claim of inadequate medical treatment in violation of the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The Eighth Amendment standard includes objective and subjective criteria: (1) "the deprivation alleged must be, objectively, sufficiently serious"; and (2) "a prison official must have a sufficiently culpable state of mind[:] deliberate indifference to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Under the objective element, an inmate must allege his medical needs were "sufficiently serious," a standard that "contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (internal quotations and citations omitted). However, a prisoner is not required to allege that he "experiences pain that is at the limit of human ability to bear, nor [must he allege] that

[his] condition will degenerate into a life-threatening one." *Brock v. Wright,* 315 F.3d 158, 163 (2d Cir.2003).

The subjective element requires the prisoner to allege "something more than mere negligence" yet "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835; *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996). The defendant prison official must "know [ ] of and disregard [ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer,* 511 U.S. at 837. "[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., ... a conscious disregard of a substantial risk of serious harm." *Chance v. Armstrong,* 143 F.3d 698, 703 (2d Cir.1998) (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)). "Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003).

#### 1. *Urinary Tract Infection*

**\*7** The gravamen of the Amended Complaint is that numerous named and unnamed medical personnel at six different prison facilities and at Bio-Reference ignored the five laboratory reports indicating the presence of bacteria in his urine and therefore failed to diagnose or treat his alleged urinary tract infection. [4] This Court need not decide whether Whitfield's alleged chronic urinary tract infection constituted a serious medical need because the acts and omissions Whitfield alleges fail to rise to the level of deliberate indifference.

[4]    A district court has the power to *sua sponte* dismiss claims against nonmoving defendants for failure to state a claim, as long as the plaintiff has been given an opportunity to be heard. *See Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991). In this case, Whitfield has been heard both in his Amended Complaint-which this Court in its discretion permitted him to file *after* the motions under consideration were filed-and in his papers in opposition to those motions.

"[A]lthough the provision of medical care by prison officials is not discretionary, the type and amount of medical treatment is discretionary." *Perez v. Hawk,* 302 F.Supp.2d 9, 21 (E.D.N.Y.2004). "[D]isagreements over medications, diagnostic techniques ..., forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.,* 151 F.Supp.2d 303, 312 (S.D.N.Y.2001); *see also Estelle,* 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

Whitfield's claims that Drs. O'Connell, Muthra and Maw-who each ordered a single laboratory report-ignored the presence of bacteria in his urine and failed to treat his alleged urinary tract infection are at most "isolated omission[s] to act" which do "not support a claim under section 1983 absent special circumstances indicating an evil intent, recklessness, or at least deliberate indifference ..." *Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir.1985) (*per curiam* ). Even if, as Whitfield alleges, basic medical procedure required these Defendants to "take appropriate additional steps" to determine the nature of the bacteria found, this is at most negligence, not deliberate indifference. *See Chance,* 143 F.3d at 703.

Whitfield further alleges that Drs. Fein, Everett, Ginsberg, Fine and Halko, and no fewer than eighteen registered nurses ignored the laboratory reports when treating him between January 1990 and July 2008. Whitfield does not allege at what point in that mostly time-barred eighteen-year period he was examined or treated by any of these Defendants, under what circumstances, or for what medical conditions. Because Whitfield does not "identif[y] the particular events giving rise to [his] claim[s]" against these Defendants, his Amended Complaint fails to give them "fair notice of what the claim is and the grounds upon which it rests." *Boykin v. KeyCorp.,* 521 F.3d 202, 214-15 (2d Cir.2008).

Whitfield's claims against Dr. Lancellotti concerning treatment for his urinary tract infection also fail as "mere disagreement[s] over [ ] proper treatment [which] do [ ] not create a constitutional claim." *Chance v.*

*Armstrong,* 143 F.3d 698, 703 (2d Cir.1998); *see also Joyner v. Greiner,* 195 F.Supp.2d 500, 505 (S.D.N.Y.2002) (physician's refusal to order an MRI not actionable under the Eighth Amendment). "So long as the treatment given is adequate," as Dr. Lancellotti's was here, "the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance,* 143 F.3d at 703.

**\*8** Finally, Whitfield fails to state a claim against the Bio-Reference Defendants. A laboratory's choice not to perform bacteria identification and antibiotic sensitivity tests on blood and urine samples are medical judgments of the kind that cannot give rise to a constitutional claim. *See Estelle,* 429 U.S. at 107.

Accordingly, this Court grants Defendants' motions to dismiss Whitfield's deliberate indifference to serious medical needs claims arising from the treatment of his urinary tract infection.

### 2. *Wart Removal*

Whitfield alleges that Dr. Lancellotti inadequately performed a laser surgical removal of a wart and refused to prescribe pain killers during post-operative recovery. Warts do not constitute a serious medical need under the Eighth Amendment. *See Page v. Scott,* No. 07 Civ. 287(BES)(VPC), 2009 WL 604922, at *6 (D.Nev. Feb. 17, 2009) (plantar warts are not a serious medical need). Moreover, the allegedly hostile and incomplete performance of a laser surgical wart removal and refusal to prescribe pain medication thereafter does not constitute deliberate indifference. *See White v. Corrs. Med. Servs.,* No. 06 Civ. 680(SNL), 2006 WL 1391298, at *2 (E.D.Mo. May 19, 2006) (prisoner's allegations of "failure to remove [his] warts entirely" and resulting pain "may be cognizable as a negligence or medical malpractice claim under state law, [but] they are insufficient to sustain a constitutional violation"). Not surprisingly, this Court could not find any decisions by courts in the Second Circuit concerning deliberate indifference claims as applied to non-venereal warts. Accordingly, this Court dismisses Whitfield's deliberate indifference to serious medical needs claim concerning the wart removal with prejudice pursuant to Rule 12(b) (6).

### B. *Conspiracy*

To state a claim for "a § 1983 conspiracy, a plaintiff must [allege]:(1) an agreement between two or more state actors ... (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999). [5] Because "Section 1983 is only a grant of a right of action [,] the substantive right giving rise to the action must come from another source." *Singer v. Fulton Cty. Sheriff,* 63 F.3d 110, 119 (2d Cir.1995). Therefore, a § 1983 conspiracy claim "will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right." *Singer,* 63 F.3d at 119 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (one of the necessary elements of a § 1983 action is "that the defendant has deprived [the plaintiff] of a right secured by the 'Constitution and laws' of the United States")). Since Whitfield's deliberate indifference to serious medical needs claims fail, his claim of a conspiracy also falls.

[5] "[A] § 1985(3) claim generally describes a conspiracy of two or more persons for the purpose of depriving of another of equal protection of the laws or equal privileges and immunities under the laws." *Dixon v. City of Lawton, Okla.,* 898 F.2d 1443, 1447 (10th Cir.1990). However, " § 1985(3) requires proof that a conspirator's action was motivated by a class-based, invidiously discriminatory animus; there is no such requirement under § 1983." *Dixon,* 898 F.2d at 1447 (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)).

### C. Retaliation

"[T]o survive a motion to dismiss a complaint, a plaintiff asserting First Amendment retaliation claims must allege (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003) (internal quotation marks and citation omitted). It is well established that the filing of prison grievances is constitutionally protected conduct. *See Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996) ("retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments"). Nonetheless, "[c]ourts properly approach prisoner retaliation claims with skepticism and particular

care, because virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation-can be characterized as a constitutionally proscribed retaliatory act." *Davis,* 320 F.3d at 352; *see also Williams v. Fisher,* No. 02 Civ. 4558(LMM), 2003 WL 22170610, at *10 (S.D.N.Y. Sept.18, 2003) ("because of the ease of fabricating a claim of retaliation, the Second Circuit requires the court to handle such claims with care").

**\*9** "[I]n the prison context [the Second Circuit has] defined 'adverse action' *objectively,* as retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising constitutional rights.' " *Gill v. Pidlypchak,* 389 F.3d 379, 381 (2d Cir.2004) (emphasis in original and citation omitted). In considering a prisoner retaliation claim, courts must bear in mind that "prisoners may be required to tolerate more ... than average citizens, before a [retaliatory] action taken against them is considered adverse." *Davis,* 320 F.3d at 353 (internal quotation marks omitted); *Young v. Strack,* No. 05 Civ. 9764(WHP), 2007 WL 1575256, at *7 (S.D.N.Y. May 29, 2007).

Although courts in this district have recognized that a prison physician's retaliatory treatment may well constitute "adverse action," these cases involve the revocation of "necessary medical rehabilitative treatment," *Williams,* 2003 WL 22170610, at *11, or the denial of medical treatment for injuries later requiring surgery, *Burton v. Lynch,* --- F.Supp.2d ----, No. 08 Civ. 8791(LBS), 2009 WL 3286020, at *9, 11 (S.D.N.Y. Oct. 13, 2009). That Dr. Lancellotti may have performed a laser wart removal without the most pleasant of bedside manners, or that he may have left part of the wart behind and declined to prescribe pain killers falls far short of "adverse action" which would chill the speech of a similarly situated individual of ordinary firmness. Dr. Lancellotti's alleged actions are "simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis,* 320 F.3d at 353. Accordingly, this Court dismisses Whitfield's retaliation claim concerning Dr. Lancellotti's laser removal of a wart from Plaintiff's arm.

### V. *State Law Claims*

Having dismissed all of Whitfield's federal claims, this Court declines to exercise supplemental jurisdiction over his pendant state law claims. *See* 28 U.S.C. § 1367; *Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir.1998) ("In

general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

## CONCLUSION

For the foregoing reasons, the State Defendants' and the Bio-Reference Defendants' motions to dismiss the Amended Complaint are granted. The Clerk of the Court shall terminate all pending motions and mark this case as closed.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 1010060

---

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2003 WL 22327163
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Barry I. BLOOM, Plaintiff,

v.

UNITED STATES GOVERNMENT, New York
State Government, New York City Government,
Brite Smile, Inc., United Techonologies Corp.,
Daimler–Chrysler, and Power Bar, Defendants.

No. 02Civ.2352DABDF.
|
Oct. 10, 2003.

Suit was brought against federal and state government officials, and private companies, alleging conspiracy to deny substantive due process rights, and also alleging various substantive offenses. Defendants moved to dismiss. The District Court, Batts, J., held that: (1) claim was not stated that defendants conspired to lynch and murder defendant; (2) claims of attempted lynching, lynching, attempted murder and theft of intellectual property were not stated; (3) claim of intellectual property appropriation was not stated against candy company; (4) statute of limitations had run against claim; and (5) leave to replead would not be granted.

Dismissed with prejudice.

West Headnotes (5)

**[1]     Conspiracy**
     Pleading

Claim under § 1983, that defendants violated claimant's right to substantive due process by conspiring to lynch and murder him, was not stated when claimant alleged that conspirators drugged him, keeping him from pursuing practice of dentistry, and that federal officials kept him from receiving grants and other forms of remuneration; necessary details were not forthcoming. Fed.Rules Civ.Proc. Rule 12(b)(6), 28 U.S.C.A.

2 Cases that cite this headnote

**[2]     United States**
     Pleading

Claims of attempted lynching, lynching, attempted murder and theft of intellectual property were not stated against government; no details were given for first three claims, and theft of intellectual property claim was supported by obviously baseless conclusion that claimant had written and not been compensated for preparing text for presidential campaign. Fed.Rules Civ.Proc. Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

**[3]     Copyrights and Intellectual Property**
     Infringement

Lack of particularity precluded statement of claim that candy company had appropriated information regarding nutrition bar and used it to procure patent. Fed.Rules Civ.Proc. Rule 12(b)(6), 28 U.S.C.A.

Cases that cite this headnote

**[4]     Limitation of Actions**
     Civil rights

Statute of limitations, on claims that state defendants violated federally protected rights of claimant, began to accrue on dates that claimant first became aware of harm, precluding assertion of § 1983 claims, even though claimant argued that effect of harms was still being felt. 42 U.S.C.A. § 1983; N.Y.McKinney's CPLR § 214(2).

Cases that cite this headnote

**[5]     Federal Civil Procedure**
     Pleading over

Leave to replead complaint after dismissal would not be allowed to claimant raising claims of conspiracy to lynch him and that he was entitled to compensation for writing presidential campaign material, when claims

were frivolous and time barred, and claimant had history of filing frivolous claims.

[13 Cases that cite this headnote](#)

*MEMORANDUM & ORDER*

[BATTS](#), J.

**\*1** Plaintiff Barry Bloom commenced this action *pro se* against the above-named Defendants, claiming that, over a nine-year period, they conspired and attempted to murder and lynch him, actually lynched him, stole his intellectual property, and invaded his privacy. Defendants United States Government (the "Government"); New York State, the Office of Professional Discipline of the New York State Department of Education, Allison Burkwitt and Steven Racow (the "State Defendants"); and Power Foods Manufacturing, Inc. (sued here as "Power Bar") move to dismiss all claims against them pursuant to [Rules 8 and (12)(b)(1), (4) and (6) of the Federal Rules of Civil Procedure](#). For the reasons stated below, the Court grants Defendants' motions to dismiss under [Rule 12(b)(6)](#) for failure to state a claim upon which relief can be granted.

## I. BACKGROUND

A. Plaintiff's Complaint

Plaintiff commenced this action by filing his Original Complaint on March 26, 2002. In it Plaintiff alleges that, between 1992 and 2000, he was the victim of a conspiracy to lynch and murder, attempted lynching and murder, actual lynching, invasion of privacy and theft of intellectual property perpetrated by numerous defendants including the Government, State Defendants and Power Bar. Amended Complaint, filed October 24, 2002, ("Am.Compl.") at 1. [1]

[1] Because the allegations in the Original and Amended Complaints are identical, the Court cites to the Amended Complaint for purposes of the present motions to dismiss.

Plaintiff alleges that the Government and its agents [2] conspired and attempted to lynch and murder him by repeatedly drugging him with a variety of substances

over a nine-year period. From the third week of January 1992 through 1996, Plaintiff was allegedly "drugged with an unknown substance causing dullness and rendering [Plaintiff] non-functional," which in turn forced him to stop working as a dentist. Am. Compl. at 3. Later, from February 1997 through April 1998, Plaintiff was allegedly drugged at least six times with a "substance believed to be [atropine](#)," as well as another unknown substance "lasting twelve hours," both of which supposedly caused Plaintiff to suffer "urinary retention." *Id.* at 4–6. Thereafter, Plaintiff claims, he learned to successfully self-treat the urinary retention with [urecholine](#). *Id.* at 5. However, he was then allegedly drugged several more times from 1999 through November 2000 with diuretics causing "partial urinary incontinence and sexual competence" and with unknown substances that caused "paralysis of the bowel for five days" and "swelling of legs." *Id.* at 6–7.

[2] The Plaintiff lists "William Clinton, Hillary Clinton, Al Gore, Tipper Gore, Louis Freeh (Director the FBI) and "the Dirty Tricksters of the Federal Bureau of Investigation" as agents of the Government. Am. Compl. at 1–2.

Plaintiff also alleges theft of intellectual property and actual lynching on the part of the Government. Specifically, in 1991, Plaintiff allegedly "wrote the campaign text for the Clinton/Gore presidential campaign," for which he was never paid, Am. Compl. at 2., and, in September 1996, was wrongfully "debarred" by the "Office of Personnel Management of the United States Government" and thus excluded from grants, loan guarantees, loans, scholarships and government contracts. *Id.* at 4. This exclusion, Plaintiff claims, was "a major goal and victory" of the Government "lynch mob" and made it "impossible for [him] to go into business." *Id* .

**\*2** Plaintiff characterizes the Government's behavior towards him as "similar to the worst forms of torture," "grotesque," and "represent[ing] the worst form of atrocity known to mankind." Am. Compl. at 18. Plaintiff seeks relief in the form of $500 million in compensatory damages for loss of income, punitive damages for pain and suffering, and "damages due to inhumane treatment ... not ascribable to any normal behavior pattern." *Id.*

Plaintiff also alleges a pattern of unfair treatment and harassment on the part of the State Defendants. Specifically, he alleges that, in 1991, two "invalid complaints" against him were made to the Office

of Professional Discipline (of the New York State Department of Education), which, although dismissing such complaints as invalid, allegedly "acted as a kangaroo court." Am. Compl. at 3. Then, in 1995, the Office of Professional Discipline allegedly caused the New York State Board of Regents to revoke Plaintiff's dental license. *Id.* at 4. Additionally, Plaintiff attributes his alleged 1996 "debarrment by the Office of Personnel Management of the United States Government"which he includes as part of the lynching conspiracy allegedly devised by the Government- to the State Defendants. *Id.* at 18. Plaintiff is in turn seeking $100 billion in compensatory ands punitive damages as relief for the injuries he supposedly suffered as a result of these wrongful acts by the State Defendants. *Id.*

As for Power Bar, Plaintiff appears to claim theft of intellectual property. Specifically, Plaintiff alleges that in 1991, he was "working on creation of 'power bar' and all other nutrition bars, Am. Compl. at 2, which he apparently was never able to finish. What happened next is unclear, but at some point during the "physical assault" Plaintiff allegedly suffered at the hands of the Government and other Defendants, "the Nutrition Bar Companies", of which Power Bar is one, apparently took the work that Plaintiff had done on the creation of nutrition bars, gained a patent on the bars, and brought them to market. *Id.* at 16. As relief for the injuries he supposedly suffered from Power Bar's alleged wrongdoing, Plaintiff seeks rescission of all of Power Bar's patents and reissuance of such patents to him, the "intellectual property of the company," the "real property of the company," "all manufacture and sales units of all divisions" of Power Bar, "all income of the company," and "the full value of the treasury of the Power Bar Company." *Id.* at 15–16. [3]

--- 

[3] Plaintiff also makes several additional allegations against the New York City Government, the Brite Smile Company, United Technologies Corporation, and Daimler–Chrysler AG. Am. Compl. at 8, 10–16. However, because none of these Defendants has moved to dismiss the claims against them, the Court will not discuss the allegations against them here.

### B. Defendants' Motions to Dismiss

In response to Plaintiff's Original Complaint, the Government filed its Motion to Dismiss on July 24, 2002, urging dismissal of Plaintiff's claims against it on three grounds: (1) the complaint's "rambling, incomprehensible and unnecessarily voluminous" nature violates the "short and plain statement of claim" requirement of Federal Rule of Civil Procedure 8; (2) the complaint fails to sufficiently state a claim upon which relief can be granted, thus requiring dismissal under Rule 12(b)(6); and (3) dismissal is proper pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction due both to the Government's sovereign immunity and the clear frivolity of Plaintiffs' claims. Memorandum of Law in Support of Government's Motion to Dismiss (Gov.'t Mem.) at 4–7.

**\*3** The State Defendants filed their motion to dismiss on July 25, 2003, urging dismissal of Plaintiff's claims against them on four grounds: (1) dismissal pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction on account of New York State's sovereign immunity from damages suits in federal court and the individual State Defendants' absolute immunity from civil liability; (2) dismissal pursuant to Rule 12(b)(4) for insufficient service of process by Plaintiff due to his failure to name State Defendants as defendants in his Original Summons and Complaint; (3) dismissal pursuant to Rule 12(b)(6) because Plaintiff's claims are time-barred; and (4) dismissal pursuant to Rule 12(b)(6) because Plaintiff's claims against State Defendants fail to state a cause of action. Memorandum of Law in Support of State Defendants' Motion to Dismiss ("State Def. Mem.") at 3–10.

Power Bar filed its motion to dismiss on April 2, 2003, seeking dismissal of Plaintiff's claims on three grounds: (1) dismissal under Rules 8(a)(1) and 12(b)(1) of the Federal Rules of Civil Procedure due to Complaint's failure to allege a basis for subject matter jurisdiction; (2) dismissal pursuant to Rule 8(a)(2) for failure to provide a short and plain statement of claim showing that Plaintiff is entitled to relief; and (3) Rule 12(b)(6) dismissal for failure to state a claim upon which relief can be granted. Memorandum of Law in Support of Power Bar's Motion to Dismiss ("Power Bar Mem.") at 4–14.

### C. Additional Procedural History

On September 26, 2002, Magistrate Judge Debra Freeman, to whom this Court referred the present action for general pre-trial supervision on April 18, 2002, held an initial case management conference. The next day, Judge Freeman issued a scheduling order in which she required Plaintiff to file an Amended Complaint by October 28, 2002 which identified, in the caption of the case, all entities and/or individuals that Plaintiff wished to name as

defendants. Scheduling Order, dated September 27, 2002, ¶ 1. The case caption in Plaintiff's Original Complaint named only the Government as a defendant even though the body of the Complaint contained allegations against State Defendants, Power Bar and several other entities. The scheduling order also specified that, to the extent any of the entities named as defendants in the body of the Original Complaint were named in the caption of the Amended Complaint, any pending motions to dismiss already filed on behalf of these entities would be unaffected and would not need to be refiled. *Id.* ¶ 3. Plaintiff filed his Amended Complaint on October 24, 2002, naming the Government, the State Defendants, New York City Government, Brite Smile, Inc., United Technologies Corporation, Daimler–Chrysler and Power Bar as defendants. Thus, the Government's and the State Defendants' motions to dismiss are ripe for the Court's consideration, and Power Bar's motion, filed in response to the Amended Complaint, is of course also properly before the Court.

## II. DISCUSSION

### A. Dismissal Under Rule 12(b)(6)

**\*4** As an initial matter, the Court notes that where a plaintiff proceeds *pro se,* a court must liberally construe the complaint and " 'interpret [it] to raise the strongest arguments that [it] suggests," ' *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)), thus holding the *pro se* pleading " 'to less stringent standards than formal pleadings drafted by lawyers." ' *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam)); *see also Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994), cert. denied, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

In deciding a Rule 12(b)(6) motion, the Court must read the complaint generously, accepting as true the factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiff. *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995); *Mills v. Polar Molecule Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). Dismissal is only proper when "it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Because a Rule 12(b)(6) motion is used to assess the legal feasibility of a complaint, a court should not "assay the weight of the evidence which might be offered in support thereof." *Ryder v. Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984). Rather, the court must limit its consideration to the facts that appear on the face of the complaint. *Id.; Brass v. American Film Technologies, Inc.,* 987 F.2d 142, 150 (2d Cir.1993).

### B. Claims Against the Government

#### 1. Conspiracy to Lynch and Murder

**[1]** Construing Plaintiff's complaint liberally, the Government's alleged conspiracy to murder and lynch the Plaintiff apparently centered around a more than eight-year effort to drug him with atropine and other unknown substances that allegedly caused Plaintiff severe health problems and prevented him from working. Am. Compl. at 3–7. The complaint does not, however, specifically allege that the Government or any individuals affiliated with it had anything to do with the druggings. Plaintiff also alleges that the Government's Office of Personnel Management excluded him from "grants, loan guarantees, loans, scholarships and government contracts," and that such exclusion was "a major goal and victory for the lynch mob" that made "it impossible for [Plaintiff] to go into business." Am. Compl. at 4. Plaintiff's claims thus essentially amount to a § 1983 cause of action alleging that the Government, acting under color of law, conspired and attempted to illegally deprive him of various substantive due process rights under the Constitution, namely his right to life and right to pursue a livelihood.

Complaints containing only "conclusory, vague or general allegations" of a conspiracy to deprive a plaintiff of his constitutional rights will not survive a motion to dismiss. *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.1983) (per curiam) *Gyadu v. Hartford Insur. Co.,* 197 F.3d 590, 591 (2d Cir.1999) (per curiam) (citing *Sommer* ). Plaintiff "must provide a basis in fact" for his conspiracy claims by pleading particular overt acts performed in furtherance of the conspiracy, *Polur v. Raffe,* 912 F.2d 52, 56 (2d Cir.1990); *Sommer,* 709 F.3d at 175 (same), as well as facts showing that defendants actually entered into an agreement to violate Plaintiff's rights. *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995) ("To sustain a conspiracy claim under 42 U.S.C. § 1983, plaintiff must

demonstrate that a defendant 'acted in a willful manner, culminating in an agreement ... that violated the plaintiff's rights.") (citation omitted); *Romer v. Morgenthau,* 119 F.Supp.2d 346, 363 (S.D.N.Y.2000) ("[P]laintiff must provide some factual basis supporting a 'meeting of the minds', such as that defendants 'entered into an agreement ... to achieve the unlawful end.'") (citation omitted)

**\*5** Under the foregoing standards, Plaintiff has not sufficiently stated claims for conspiracy to murder and lynch. While the complaint arguably describes overt acts committed in furtherance of the conspiracy to murder, namely the druggings of the Plaintiff, the complaint contains no facts linking the Government or any of its agents to these druggings. Moreover, Plaintiff has not put forth any facts establishing how the Government or any of its agents entered willfully into an agreement to commit the druggings or other unlawful acts against Plaintiff. As for excluding Plaintiff from grants, loans and other governmental benefits, Plaintiff offers no specific facts substantiating this baldly conclusory allegation. Accordingly, Plaintiff's claims of conspiracy to murder and lynch must be dismissed pursuant to Rule 12(b)(6).

2. Other Claims Against the Government

**[2]** Plaintiff's five remaining claims against the Government include attempted lynching, lynching, attempted murder, and theft of intellectual property. Am. Compl. at 1. As with his conspiracy claims, Plaintiff fails to allege any specific facts supporting what amount to generalized, conclusory allegations. As discussed above, Plaintiff offers no facts linking the Government to the druggings that apparently constitute the "attempted murder" to which Plaintiff is referring in the complaint. Moreover, to the extent that the Government's alleged denial of loans, contracts and other benefits to Plaintiff constitute lynching and/or attempted lynching, Plaintiff sets forth no specific examples of such denials nor any explanation of how such denials were in fact unlawful.

With the respect to the intellectual property claim, Plaintiff's lone supporting factual allegation, that he wrote the campaign text for the Clinton–Gore Presidential Campaign but was never compensated for doing so, while specific, is clearly baseless and thus cannot support a valid cause of action. *See Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam) (a district court may dismiss a *pro se* prisoner's § 1983 complaint " 'when the

factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy." ') (citation omitted). In sum, because the complaint fails to provide "the factual basis necessary to enable [the Government] intelligently to prepare [its] defense," the claims must be dismissed under Rule 12(b)(6). *Oster v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) (per curiam) (dismissing *pro se* complaint with no factual support for its conclusory allegations); *America v. New York Passport Center,* No. 91 CIV. 2731(MJL), 1991 WL 258763, \*2 (S.D.N.Y. Nov.27, 1991) (same).

C. Claims Against Power Bar

**[3]** Power Bar argues that the claims against it in Plaintiff's Amended Complaint "fail to comply with even the most liberal application of Rule 12(b)(6)." Power Bar Mem. at 12. Power Bar emphasizes that the Amended Complaint contains "no allegation that [D]efendant Power Bar wrongly deprived plaintiff of his 'work' on the creation of power bar and other nutrition bars,' let alone any facts whatsoever as to how such an event might have occurred, when it occurred, what individuals were involved, where it took place, etc.," and, as such, the claims against Power Bar should be dismissed for failure to state a claim. *Id.* at 13–14.

**\*6** Even under the lenient standard by which a pro se plaintiff's pleadings are construed, Plaintiff must allege facts sufficient to show he is entitled to relief. *See Bloom v. Democratic National Committee,* No. 01 CIV. 11598, 2002 WL 31496272, at \*2 (S.D.N.Y. Nov.6, 2002) (Dismissing breach of contract claim brought by *this very same pro se Plaintiff* for failure to allege facts supporting any of the elements of a breach of contract claim) (*emphasis added* ). "Mere conclusory allegations 'fail to give notice of the basic events and circumstances of which plaintiff complains. Such allegations are meaningless as a practical matter and, as a matter of law, insufficient to state a claim." ' *Ruderman v. Police Dept. of the City of New York,* 857 F.Supp. 326, 330 (S.D.N.Y.1994) (holding that pro se plaintiff's complaint merely alleging belief that defendant was discriminating against him without offering any specific facts tending to support such belief "does not suffice to maintain a cause of action.") (citation omitted); *see also America v. New York Passport Center,* No. 91 CIV. 2731, 1991 WL 258763, at \* 2 (S.D.N.Y. Nov.27, 1991) (dismissing pursuant to Rule 12(b)(6) pro se complaint containing "conclusory, unsupported

allegations which are not even remotely substantiated by any factual basis.")

Plaintiff's theft of intellectual property claims against Power Bar are precisely the kind of conclusory allegations which are plainly insufficient to prevent a Rule 12(b)(6) dismissal. While Plaintiff does allege that "the nutrition bars (power bars, protein bars, etc.) that [he] was working on" were patented and sold by someone other than himself, Am. Compl. at 16, he does not, as Power Bar notes, put forth any facts regarding who took the information from him or how and when they did so. Moreover, the Complaint does not even directly allege that Power Bar did anything wrong. The Amended Complaint only mentions Power Bar the company when demanding relief and when mentioning that the son of a colleague had worked for Power Bar in the past. Am. Compl. at 15–16, 20. Thus, the vagueness of Plaintiff's claims against Power Bar also favors their dismissal. *See America v. New York Passport Center,* 1991 WL 258763, at *2 (holding that "rambling vague" pro se complaint which "fails to state any discernible claims at all" must be dismissed.)

D. Claims Against State Defendants

**[4]** State Defendants argue that Plaintiff's claims against them are time-barred and therefore must be dismissed pursuant to Rule 12(b)(6). [4] They reason that because their alleged wrongdoing occurred and was discovered by Plaintiff no later than September 1994, Plaintiff's claims fall clearly outside the three-year statute of limitations which they argue applies to Plaintiff's claims against them. State Def. Mem. at 8–9; State Defendants' Reply Memorandum of Law, filed July 25, 2002 ("State Def. Reply"), at 2. Plaintiff in turn argues that the State Defendants' allegedly wrongful acts "continue consistently through the year 2000," that the results of these acts "continue to have detrimental effects," and that State Defendants' actions are part of an on-going conspiracy and should be treated as such. Plaintiff's Memorandum of Law Opposing a Motion to Dismiss State Defendants' Responsibilities of Action, filed July 25, 2002 ("Pl.'s Opp. to State Def."), at 4.

[4] A motion to dismiss an action on statute of limitations grounds is properly treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which

relief can be granted. *See Ghartey v. St. John's Queens Hospital,* 869 F.2d 160, 162 (2d Cir.1989).

**\*7** Because Plaintiff is claiming that State Defendants wrongfully used their authority to impinge upon one of his substantive due process rights, the right to pursue a livelihood, his claims against State Defendants are properly classified as § 1983 claims. Accordingly, the three-year statute of limitations imposed by New York C.P.L.R. § 214(2) applies. *See Eagleston v. Guido,* 41 F.3d 865, 871 (2d Cir.1995) ("For § 1983 actions arising in New York, the statute of limitations is three years."); *Pinaud v. County of Suffolk,* 52 F.3d 1139, 1156 (2d Cir.1995) (same). While state law applies supplies the statute of limitations for § 1983 claims, federal law determines when a federal claim accrues. *Eagleston,* 41 F.3d at 871. The Second Circuit has determined that a § 1983 claim accrues "when the plaintiff 'knows or has reason to know' of the harm." *Id.* (quoting *Cullen v. Margiotta,* 811 F.2d 698, 725 (2d Cir.1987), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987)).

Based on the allegations in the Amended Complaint, none of Plaintiff's claims against State Defendants accrued fewer than three-years prior to the filing of this action. The most recent wrong related to State Defendants that is cited in the Amended Complaint, his "debarment by the Office of Personnel Management of the United States Government, occurred September 5, 1996, Am. Compl. at 4, 18, and thus Plaintiff knew of the alleged wrong at least six and a half years prior to bringing this lawsuit. Plaintiff's argument that the results of Defendants activities "continue to have detrimental effects," Pl.'s Opp. to State Def. at 4, is unavailing. When it comes to accrual of a § 1983 claim, "the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act becomes [sic] painful." *Eagleston,* 41 F.3d at 871 (*emphasis in the original* ) (internal quotations omitted).

Moreover, the fact that State Defendants alleged wrongful acts are part of conspiracy does not in any way postpone the accrual dates of Plaintiff's claims. As the Second Circuit has noted:

> "[c]haracterizing defendants' separate wrongful acts as having been committed in furtherance of a conspiracy ..., does not postpone accrual of claims based on individual wrongful acts. The

crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action. To permit him to wait and toll the running of the statute simply by asserting that a series of separate wrongs were [sic] committed pursuant to a conspiracy would be to enable him to defeat the purpose of the time-bar, which is to preclude the resuscitation of stale claims."

*Singleton v. City of New York,* 632 F.2d 185, 192 (2d. Cir.1980). Accordingly, Plaintiff's claims against State Defendants accrued no later than September 1996, when the most recent of their alleged wrongful acts took place. Because this accrual was six-and-a-half years before the filing of this action, Plaintiffs' claims are therefore time-barred.

E. Leave to Re–Plead/Amend Complaint

**\*8** **[5]** Even when a complaint has been dismissed pursuant to Rule 12(b)(6), permission to amend it "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "While it is the usual practice upon granting a motion to dismiss to allow leave to replead", *Cohen v. Citibank,* No. 95 Civ. 4826, 1997 WL 883789, at *2 (S.D.N.Y. Feb. 28, 1997), a court may dismiss without leave to amend when amendment would be futile, *Oneida Indian Nation of New York v. City of Sherrill,* 337 F.3d 139, 168 (2d Cir.2003) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)), or when the "substance of the claim pleaded is frivolous on its face." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) (citing *Moorish Science Temple v. Smith,* 693 F.2d 987, 990 (2d Cir.1982). A claim is frivolous when it is vague and incomprehensible, *see Landesberg v. Meador,* No. 96 CIV. 3033, 1997 WL 473585, at *4 (S.D.N.Y. Aug.19, 1997), or when it is supported by baseless factual allegations "describing fantastic or delusional scenarios." *Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y.1993) (citing *Neitzke v. Williams,* 490 U.S. 319, 328, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989)).

Plaintiff's claims against the Government are frivolous on their face. His allegations that agents of the Government conspired to drug him and that he drafted

the Clinton–Gore presidential campaign text are the type of fantastic claims courts have not hesitated to dismiss with prejudice. *See Tyler,* 151 F.R.D. at 540 (dismissing with prejudice *pro se* complaint alleging that the Federal Government had bugged plaintiff's college dormitory as part of its conspiracy to reinstitute slavery). Moreover, plaintiff's allegations that he was denied loans and other governmental benefits by a Government "Lynch Mob" intent on keep him from going into business is utterly incomprehensible. *See Landesberg,* 1997 WL 473585, at *4 (dismissing with prejudice plaintiff's claim that the Federal Judiciary's misinterpretation of certain sections of the Constitution caused plaintiff "a permanent psychological scar").

Leave to amend would be futile and thus is also unwarranted when the claims to be amended are barred by the statute of limitations. *See Jones v. Trump,* No. 96 CIV. 2995, 1997 WL 277375, at *8 (S.D.N.Y. May 27, 1997) ("[T]hose claims that are barred by the statute of limitations ... cannot succeed no matter how they are pleaded.") (citation omitted); *De la Fuente v. DCI Telecommunications, Inc.,* 206 F.R.D. 369, 387 (S.D.N.Y.2002)(holding that because plaintiffs' claims were barred by statute of limitations, any attempt to amend would be futile). As discussed above, Plaintiff's claims against State Defendants are barred by a 3–year statute of limitations, and thus amending the allegations by adding more specific supporting facts will not change that fact.

Finally, and perhaps most importantly, the Court notes that courts in this Circuit have been loathe to give a plaintiff another chance to pursue his patently meritless claims when his history of frivolous lawsuits makes it likely that he will continue to waste judicial resources and cause opposing parties needless additional expense by re-filing such actions. *See O'Malley v. New York City Bd. Of Education,* 112 F.3d 69 (2d Cir.1997) (permanently enjoining plaintiff who had repeatedly filed similar meritless actions in several other courts and jurisdictions from filing further actions in the Southern District of New York without leave of court); *Jones v. Trump,* 1997 WL 277375, at *9 (dismissing with prejudice meritless claims brought by plaintiff whose previously filed actions based on the same events demonstrated his claims "were an attempt to use the courts to harass defendants through a continued course of vexatious litigation"). In light of Plaintiff's prior practice of filing frivolous lawsuits

against some of these very same Defendants, *see Bloom v. Democratic National Committee,* 2002 WL 31496272 (action against William and Hillary Clinton to force payment for allegedly developing Clinton presidential campaign text), anything but a dismissal of the current claims with prejudice would no doubt unnecessarily and unfairly expose Defendants to further litigation with Plaintiff. Because this Court has both the power and obligation not to let that happen, *see Martin–Trigona v. Lavien,* 737 F.2d 154, 1261 (2d Cir.1984), it refuses to grant Plaintiff leave to amend his Complaint as to the Government, State Defendants or Power Bar.

### III. CONCLUSION

**\*9** For the reasons stated above, Plaintiff's claims against the Government, the State Defendants and Power Bar are dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) [5] for failure to state a claim upon which relief can be granted.

[5] Because the Court dismisses Plaintiff's claims pursuant to Rule 12(b)(6), it is not necessary for the Court to address the other grounds for dismissal put forth by Defendants.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 22327163

---

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

 © 2017 Thomson Reuters. No claim to original U.S. Government Works.